UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRIZ TIJERINA, individually,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ALASKA AIRLINES, INC.,<br>an Alaska Corporation; and DOES 1–50,<br><br>　　　　　　　　　　　Defendants. | Case No.: 22-CV-203 JLS (BGS)<br><br>**ORDER (1) DENYING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE; (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S REQUEST FOR JUDICIAL NOTICE; (3) SUSTAINING IN PART AND OVERRULING IN PART THE PARTIES' OBJECTIONS; AND (4) DENYING PLAINTIFF'S MOTION FOR REMAND**<br><br>(ECF Nos. 9, 9-4, 9-5, 11-3, 11-4, 13-1, 13-2) |

　　　　Presently before the Court are Plaintiff Beatriz Tijerina's ("Plaintiff") Motion for Remand to State Court of San Diego County ("Mot.," ECF No. 9) and accompanying Request for Judicial Notice ("Pl.'s RJN," ECF No. 9-5).  Also before the Court are Defendant Alaska Airlines, Inc.'s ("Defendant" or "Alaska") Opposition to Plaintiff's Motion ("Opp'n," ECF No. 11), Defendant's accompanying Request for Judicial Notice ("Def.'s RJN," ECF No. 11-3), and Plaintiff's Reply in Support of her Motion ("Reply," ECF No. 13).  Finally, both Parties have filed a variety of objections: Plaintiff's

"Objections to Defendant's Evidence in Support of Its Notice of Removal from State Court" ("Notice Objs.," ECF No. 9-4), Defendant's "Objections to Evidence Submitted by Plaintiff in Support of Motion to Remand" ("Def.'s Objs.," ECF No. 11-4), Plaintiff's "Evidentiary Objections to Evidence Defendant[] Submitted with Its Opposition to Plaintiff's Motion for Remand to State Court" ("Opp'n Objs.," ECF No. 13-1), and Plaintiff's "Objections to Defendant's Request for Judicial Notice" ("RJN Objs.," ECF No. 13-2) (collectively, the "Objections").

The Court took these matters under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 12. Having considered Defendant's Notice of Removal ("Notice," ECF No. 1), Plaintiff's Complaint ("Compl," ECF No. 1-2), the Parties' arguments and evidence, and the law, the Court **DENIES** Plaintiff's RJN, **GRANTS IN PART AND DENIES IN PART** Defendant's RJN, **SUSTAINS IN PART AND OVERRULES IN PART** the Parties' Objections,[1] and **DENIES** Plaintiff's Motion for Remand, for the reasons that follow.

## BACKGROUND

Plaintiff, a resident of the State of California, began working for Alaska in or around March 2018 as a customer service agent at the airport in San Diego, California. Compl. ¶¶ 1, 12. Plaintiff alleges that her night crew supervisor, Mark Buenaflor, engaged in sexually harassing conduct toward her. *Id.* ¶¶ 13–17. Plaintiff reported Mr. Buenaflor's conduct to Defendant's human resources department, Plaintiff's other managers, and Plaintiff's union representative. *Id.* ¶¶ 13, 17. Plaintiff alleges that Defendant thereafter retaliated against her, *id.* ¶¶ 19–20; and, on January 29, 2020, Plaintiff was constructively terminated from her employment, *id.* ¶ 26.

Plaintiff filed this action in the Superior Court of the State of California, County of San Diego, on January 4, 2022, alleging causes of actions for: (1) Quid Pro Quo Sexual Harassment – California Government Code § 12940(j); (2) Hostile Work Environment –

---

[1] The Court addresses each Objection as relevant in the Analysis that follows.

Sexual Harassment – California Government Code § 12940(j); (3) Disparate Treatment – California Government Code § 12940(a); (4) Failure to Prevent Harassment, Retaliation and Discrimination – California Government Code § 12940(k); (5) Negligent Retention; (6) Negligent Infliction of Emotional Distress; and (7) Constructive Wrongful Termination in Violation of Public Policy. *See generally* Notice; Compl. Defendant timely removed to this District on the basis that there exists complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000.00. *See* Notice at 3 (citing 28 U.S.C. § 1332(a)(1)). Plaintiff filed the instant Motion on March 16, 2022. *See generally* Mot.

## REQUESTS FOR JUDICIAL NOTICE

### I. Legal Standard

"A court can consider evidence in deciding a remand motion, including documents that can be judicially noticed." *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 941 (C.D. Cal. 2014) (compiling cases). Per Federal Rule of Evidence 201, a court may take judicial notice of an adjudicative fact if it "is not subject to reasonable dispute because it (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Rule 201, however, deals only with adjudicative facts. *See Lindland v. TuSimple, Inc.*, Case No. 21-CV-417 JLS (MDD), 2022 WL 687148, at *3 (S.D. Cal. Mar. 8, 2022) (citation omitted). "Adjudicative facts are simply facts of the particular case," whereas legislative facts are those related to "legal reasoning and lawmaking." Fed. R. Evid. 201(a), Notes of Advisory Committee on Proposed Rules Subdivision (a). "It is unnecessary to request that the court judicially notice published cases from California and federal courts as legal precedent; the court routinely considers such legal authorities in doing its legal analysis without a party requesting that they be judicially noticed." *Lindland*, 2022 WL 687148, at *3 (quoting *Lucero v. Wong*, No. C 10-1339 SI PR, 2011 WL 5834963, at *5 (N.D. Cal. Nov. 21, 2011)); *see Benton v. Cory*, 474 F. App'x 622, 623–24 (9th Cir. 2012)

("We grant [appellant]'s request for judicial notice of court filings in other proceedings, but deny as unnecessary his request for judicial notice of legal authorities.") (citing *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011)); *Owino v. CoreCivic, Inc.*, No. 17-CV-1112 JLS (NLS), 2018 WL 2193644, at *2 (S.D. Cal. May 14, 2018) ("It is well established that []courts may consider legal reasoning and conclusions of other federal courts without resort to Rule 201.") (citing *Derum v. Saks & Co.*, 95 F. Supp. 3d 1221, 1224 (S.D. Cal. 2015)); *Nguyen v. Cavalry Portfolio Servs., LLC*, No. 15-CV-0063-CAB-BLM, 2015 WL 12672149, at *2 (S.D. Cal. Feb. 20, 2015) ("[I]t is inappropriate to request that the Court take judicial notice of legal authority, as judicial notice is reserved for adjudicative fact[s] only.") (quoting *Stiller v. Costco Wholesale Corp.*, No. 3:09-cv-2473-GPC-BGS, 2013 WL 4401371, at *1 (S.D. Cal. Aug. 15, 2013)).

## II.     Analysis

Both Plaintiff and Defendant request that the Court judicially notice various documents. *See generally* Pl.'s RJN; Def.'s RJN. Specifically, Plaintiff requests the Court take judicial notice of articles and information from Defendant's website; several of Defendant's employees' and/or board members' LinkedIn profiles; a map of Burlingame and Palo Alto, California; an online article; and two jury verdict summaries. *See* Pl.'s RJN. Defendant, meanwhile, requests the Court take judicial notice of various court filings, jury verdict summaries, and state and federal court rulings. *See* Def.'s RJN. The Court addresses each RJN in turn.

### A.     Plaintiff's RJN

Plaintiff requests judicial notice of thirteen exhibits introduced through the Declaration of Jimmie D. Parker in Support of Plaintiff's Motion for Remand ("Parker Decl.," ECF No. 9-2). *See generally* Pl.'s RJN. Defendant generally objects to the Parker Declaration, arguing that "[e]vidence showing general business activities in California, without showing that corporate officers 'direct, control, and coordinate the corporation's activities' from that location is . . . irrelevant." Def.'s Objs. at 1–2. Defendant further raises specific Objections to each of Plaintiff's thirteen exhibits. *Id.* at 2–19.

First, Plaintiff seeks to have Exhibits A, B, D, H, I, K, L, and M admitted as materials "not subject to 'reasonable dispute' because the sources are from Defendant's website."[2] Pl.'s RJN at 3. However, "[i]nformation on websites, especially a party's website, is often not considered an appropriate subject of judicial notice." *Better Homes Realty, Inc. v. Watmore*, No. 316CV01607BENMDD, 2017 WL 1400065, at *3 (S.D. Cal. Apr. 18, 2017) (citations omitted); *accord Hsieh v. FCA US LLC*, 440 F. Supp. 3d 1157, 1160–61 (S.D. Cal. 2020) (declining to judicially notice party's website). Cases that do judicially notice information from websites often rely on the doctrine of incorporation by reference when the complaint necessarily relies on information appearing on a party's website. *See, e.g.*, *Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 763 (C.D. Cal. 2015) (judicially noticing certain screenshots from party's website where pleading relied on that information). Accordingly, the Court **DENIES** Plaintiff's RJN as to Exhibits A, B, D, H, I, and K and **OVERRULES AS MOOT** Defendant's Objections thereto.

Exhibits L and M consist of case and verdict summaries from Verdict Search. *See* Pl.'s RJN at 2–3; *see also* Parker Decl. Exs. L & M. Although "the accuracy of . . . jury verdicts as public records of prior proceedings can be determined by readily available resources whose accuracy cannot reasonably be questioned," *Gaines v. Costco Wholesale Corp.*, No. 2:21-CV-00992 WBS AC, 2021 WL 3077463, at *2 (E.D. Cal. July 21, 2021) (citing *Vasquez v. Arvato Digital Services, LLC*, No. CV 11-02836 RSWL (AJWx), 2011 WL 2560261, at *2 (C.D. Cal. June 27, 2011)), "the Court has some concerns as to the reliability of these surveys, which are created not by the courts but by private companies who compile the data by speaking with attorneys," *Bloomer v. Serco Mgmt. Servs., Inc.*, No. EDCV161655JGBRAOX, 2016 WL 4926409, at *1 (C.D. Cal. Sept. 15, 2016). Accordingly, the Court **SUSTAINS** Defendant's Objections and **DENIES** Plaintiff's RJN as to Exhibits L and M.

///

---

[2] The Court notes, however, that Exhibits H, L, and M appear to be from third-party websites Bisnow and Verdict Search, not Defendant's website. *See* Pl.'s RJN Exs. H, L & M.

Second, Plaintiff requests judicial notice of LinkedIn profiles for various employees and board members of Defendant, contained in Exhibits C, E, F, and G, on the basis that "their 'accuracy cannot be reasonably questioned.'" Pl.'s RJN at 4 (quoting Fed. R. Evid. 201(b)). Plaintiff notes that judicial notice of LinkedIn profiles was granted in *Perkins v. LinkedIn Corporation*, 53 F. Supp. 3d 1190 (N.D. Cal. 2014). *See* Pl.'s RJN at 4. However, *Perkins* is distinguishable, as there, LinkedIn was a party to the action; the complaint referred to the profiles in question; and LinkedIn, the defendant, also cited to and relied on the profiles in its opposition brief. *See* 53 F. Supp. 3d at 1205. In the context of this litigation and for the purposes for which Plaintiff seeks to introduce the evidence in question, "LinkedIn is not a source whose accuracy cannot be reasonably questioned." *Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H WVG, 2012 WL 2401972, at *1 (S.D. Cal. June 18, 2012) (citing Fed. R. Evid. 201(b)); *see also Scanlon v. Curtis Int'l Ltd.*, 465 F. Supp. 3d 1054, 1062 n.8 (E.D. Cal. 2020) (citing *Ibey*, 2012 WL 2401972, at *1). Accordingly, the Court **DENIES** Plaintiff's RJN as to Exhibits C, E, F, and G and **OVERRULES AS MOOT** Defendant's Objections.

Finally, Plaintiff seeks to have the Court judicially notice Exhibit J,[3] a satellite image from Bing Maps, as a source whose accuracy cannot reasonably be questioned. Pl.'s RJN at 4. Although "[c]ourts may judicially notice locations using maps and satellite images," *Tesoro Ref. & Mktg. Co. LLC v. City of Long Beach*, 334 F. Supp. 3d 1031, 1042 (C.D. Cal. 2017) (citations omitted), courts also may reject a request to judicially notice documents or facts properly subject to judicial notice if they are irrelevant, *see Santa Monica Nativity Scenes Comm. v. City of Santa Monica*, 784 F.3d 1286, 1298 (9th Cir. 2015) (denying requests for judicial notice "on the grounds that the documents to be noticed are irrelevant") (citation omitted). Given that the Court has denied judicial notice of Exhibit C, the proximity of Palo Alto to Burlingame is not relevant to the issues before

///

---

[3] Plaintiff calls this exhibit "Exhibit 11" in its RJN, *see* Pl.'s RJN at 4, but it appears Plaintiff actually is discussing Exhibit 10 or J, which is the map, *see id.* at 2; *id.* Ex. J.

the Court. *See* Mot. at 8. Accordingly, the Court **SUSTAINS** Defendant's relevance Objection and **DENIES** Plaintiff's RJN as to Exhibit J.

In summary, the Court **DENIES** Plaintiff's RJN in its entirety.

### B. *Defendant's RJN*

Defendant, meanwhile, requests that the Court take judicial notice of thirteen exhibits consisting of verdict forms, judgments, "verdict and settlement summaries" prepared by vendors like Westlaw, and orders granting attorneys' fees requests in California state and federal district court cases involving allegations of, *inter alia*, sexual harassment and wrongful termination. *See generally* Def.'s RJN. Plaintiff objects on the ground of relevance, given that these are different cases involving different parties and different facts during different time periods. *See generally* RJN Objs.

As to Exhibits 1 through 4, to the extent Defendant seeks judicial notice of verdicts in prior cases, "the accuracy of the jury verdicts as public records of prior proceedings can be determined by readily available resources whose accuracy cannot reasonably be questioned." *Gaines*, 2021 WL 3077463, at *2 (citing *Vasquez v. Arvato Digital Services, LLC*, No. CV 11-02836 RSWL (AJWx), 2011 WL 2560261, at *2 (C.D. Cal. June 27, 2011)). Accordingly, the Court **GRANTS** Defendant's RJN as to the verdict forms, which the Court was able to independently verify. The Court **DENIES** Defendant's RJN, however, as to the verdict summaries, for the reasons provided *supra* at Section II.A.[4]

Exhibits 5 through 13 consist of court orders in other actions. As noted *supra* at Section I, however, it is unnecessary for the Court to judicially notice legal authority; accordingly, the Court **DENIES** Defendant's RJN as to these exhibits. The Court may, of course, rely on the identified legal authorities and the reasoning therein to the extent they are analogous to the present case and the Court finds them persuasive.

///

---

[4] The Court also **SUSTAINS** Plaintiff's Objections to Exhibit C and pages 2 through 9 of Exhibit D to the Notice of Removal, given that those materials consist entirely of such summaries. *See* Notice Objs. at 2–3; *see also* Notice Exs. C & D.

Finally, the Court **OVERRULES** Plaintiff's Objections to Defendant's RJN. The Objections are moot as to the legal authorities the Court declines to judicially notice,[5] and the Court cannot agree that the jury verdicts are necessarily irrelevant here. Nonetheless, the Court is mindful of Plaintiff's arguments as to whether the identified authorities are analogous and what facts are similar and disparate in the Analysis that follows. *See, e.g.*, *DeCosta v. Headway Workforce Sols.*, No. CV 20-00015 LEK-KJM, 2020 WL 1822473, at *5–6 (D. Haw. Apr. 10, 2020) (finding the defendant did not meet its burden to establish punitive damages should be included in amount in controversy calculation given disparate facts); *J. Marymount, Inc. v. Bayer Healthcare, LLC*, No. C 09-03110 JSW, 2009 WL 4510126, at *3 n.1, *3–6 (N.D. Cal. Nov. 30, 2009) (taking judicial notice of verdict forms and fees awards in other actions but nonetheless finding the defendant failed to establish amount in controversy exceeds jurisdictional threshold).

In short, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's RJN.

### PLAINTIFF'S MOTION FOR REMAND

**I.  Legal Standard**

A defendant may remove an action "brought in a State court of which the district courts of the United States have original jurisdiction" to federal court. 28 U.S.C. § 1441(a). Section 1441 provides two bases for removal: diversity jurisdiction and federal question jurisdiction. Here, Defendant asserts jurisdiction is based on diversity. *See generally* Notice. Federal courts have diversity jurisdiction "where the amount in controversy" exceeds $75,000.00 and the parties are of "diverse" state citizenship. 28 U.S.C. § 1332.

The party invoking the removal statute bears the burden of establishing that federal subject-matter jurisdiction exists. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988). Moreover, courts "strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*,

---

[5] The Court also **OVERRULES** Plaintiff's Objections to pages 10 through 53 of Exhibit D to the Notice of Removal for the same reasons. *See* Notice Objs. at 3; *see also* Notice Ex. D.

863 F.2d 662, 663 (9th Cir. 1988)); *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985)).  Therefore, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566 (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).

## II.   Analysis

Plaintiff challenges Defendant's removal based on both the diversity-of-citizenship and amount-in-controversy requirements for diversity jurisdiction.  *See generally* ECF No. 9-1 ("Mot. Mem.").  Plaintiff contends that Defendant's removal was improper because (1) Defendant's "nerve center" is in California; and (2) Defendant failed to proffer sufficient evidence to meet its burden of establishing the amount in controversy.  *Id.* at 1–2.  The Court addresses each argument in turn.

### A.   *Diversity of Citizenship*

Although it is agreed that Plaintiff is a resident and citizen of the State of California, *See* Compl. ¶ 1; Mot. Mem. at 1; Notice ¶¶ 5–6, the Parties contest Defendant's citizenship.  For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1).  "Under the 'nerve center' test, a corporation's principal place of business 'should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination.'" *3123 SMB LLC v. Horn*, 880 F.3d 461, 465 (9th Cir. 2018) (citation omitted).  In its Notice of Removal, Defendant asserts that it is a corporation incorporated under the laws of the State of Alaska with its principal place of business, i.e., "nerve center," in the State of Washington.  Notice ¶ 8.  While Plaintiff concedes that Defendant is incorporated in Alaska, *see* Compl. ¶ 1, Plaintiff argues that Defendant's "nerve center" is in Burlingame, California, *see* Mot. Mem. at 6, and therefore complete diversity is lacking among the Parties.  Plaintiff bases this argument primarily on job postings and job announcements for several regional managerial positions from Defendant's website.  *See id.* at 7–8.

The Court finds that Defendant sets forth appropriate and sufficient evidence in the Declaration of Alexandra Wittenberger ("Wittenberger Decl.," ECF No. 11-1), Defendant's Managing Director of Corporate Affairs and Compliance and Assistant Corporate Secretary, *see id.* ¶ 2, to establish that Defendant's "nerve center" is in SeaTac, Washington. Ms. Wittenberger declares, based on her personal knowledge, that a significant number of Defendant's senior officers—including members of the "C-suite," such as the President and Chief Executive Officer, the Executive Vice President and Chief Commercial Officer, the Executive Vice President and Chief Operations Officer, and the Executive Vice President Finance and Chief Financial Officer—are located in and operate out of the State of Washington. *Id.* ¶¶ 1, 3, 6. She further declares that SeaTac, Washington, is where Defendant is headquartered and where its "high level corporate officers direct, control, and coordinate Alaska's major executive activities." *Id.* ¶ 4.[6]

Plaintiff argues that Burlingame, California, is Defendant's principal place of business, given that Defendant has hired, or seeks to hire, a Regional Vice President and a Director of California Commercial Performance to work out of its Burlingame, California, office. *See* Mot. Mem. at 7; Reply at 5–6. The Court has declined to judicially notice the documents on which Plaintiff relies in making this argument; however, even were the Court to consider Plaintiff's evidence, the Court finds Plaintiff's argument unpersuasive and agrees with Defendant that "corporations are not citizens of every state in which regional leaders conduct business operations, or even where the corporation does the majority of [its] business." Opp'n at 5 (citing *Martinez v. Check 'N Go of Cal., Inc.*, No. 15-CV-1864

---

[6] The Court **OVERRULES** Plaintiff's Objections to the Wittenberger Declaration. Plaintiff argues that Ms. Wittenberger's statements concerning corporate citizenship lack foundation and/or personal knowledge and are hearsay statements that are not the best evidence. *See* Opp'n Objs. at 1–6. Under Federal Rule of Evidence 602, a witness may not testify as to a matter "unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." Ms. Wittenberger provides such testimony in her declaration. *See* Wittenberger Decl. ¶ 3. Moreover, courts within the Ninth Circuit repeatedly "have found similar declarations sufficient to establish a corporation's citizenship." *Gonzalez v. Starwood Hotels*, Case No. CV 16-1068-GW (JEMx), 2016 WL 1611576, at *4 (C.D. Cal. Apr. 21, 2016) (compiling cases and finding paralegal's declaration sufficient).

1  H (RBB), 2016 WL 6103166, at *3 n.1 (S.D. Cal. Feb. 18, 2016)).  In fact, much of the
2  evidence on which Plaintiff relies to establish Defendant's supposed California citizenship
3  actually undercuts Plaintiff's position.  For example, Plaintiff quotes Alaska's Regional
4  Vice President, Neil Thwaites, as saying Defendant is "'continu[ing] to grow [its] presence
5  and network in [California] moving forward." Mot. Mem. at 9 (quoting Parker Decl. Ex.
6  A).  This suggests California is a developing rather than established market for Alaska.
7  Ultimately, "'[i]nformation regarding the principal place of business of the corporate
8  Defendant[] [is] uniquely within Defendant['s] capacity to ascertain.'"  *Gonzalez*, 2016
9  WL 1611576, at *4 (quoting *Schnabel v. Lui*, 302 F.3d 1023, 1032 (9th Cir. 2002)).
10 Defendant asserts, and the Court agrees, based on the evidence before it, that Alaska's
11 principal place of business is in the State of Washington.

12      Accordingly, the Court finds that, while Plaintiff is a citizen of California, Defendant
13 is a citizen of both Alaska, its state of incorporation, and Washington, where its principal
14 place of business and "nerve center" is located; therefore, complete diversity of citizenship
15 exists between the Parties.  The Court therefore **DENIES** Plaintiff's Motion to the extent
16 it argues diversity of citizenship is not satisfied here.

17      **B.    Amount in Controversy**

18      The Parties also dispute whether the amount at stake in the litigation reaches the
19 amount in controversy requirement of $75,000.00.  In its Notice of Removal, Defendant
20 satisfied its burden of plausibly alleging an amount in controversy exceeding $75,000.00.
21 *See* Notice at 4–8.  Plaintiff contests these allegations and argues that Defendant has not
22 established the jurisdictional amount by a preponderance of the evidence.  Mot. Mem. at
23 9.  Defendant, meanwhile, argues that Plaintiff's requested relief for economic losses,
24 emotional distress damages, punitive damages, and attorneys' fees "more likely than not"
25 exceeds $75,000.00.  Opp'n at 6–7.

26      In determining the amount in controversy, courts look first to the complaint. *Ibarra*
27 *v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "[I]n cases where a plaintiff's
28 state court complaint does not specify a particular amount of damages, the removing

defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [$75,000.00]." *E.g.*, *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  When assessing the amount in controversy, the Court considers the "amount at stake in the underlying litigation." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018).

Here, Plaintiff initiated this action in the Superior Court of California as an unlimited case, indicating that the "[a]mount demanded exceeds $25,000." *See* ECF No. 1-2 at Civil Case Cover Sheet.  However, because Plaintiff's Complaint does not specify a precise amount in damages, Defendant must prove that it is more likely than not that the amount in controversy exceeds $75,000.00.  *See Sanchez*, 102 F.3d at 404.

Plaintiff has requested in her Prayer for Relief, *inter alia*, general damages, special and compensatory damages, punitive damages, prejudgment and post-judgment interest, costs, and attorneys' fees.  *See* Compl. at Prayer for Relief.  Among her general and special damages, Plaintiff seeks emotional distress damages.  *See, e.g.*, *id.* ¶¶ 33–34, 48–49, 78, 83.  Defendant argues that the Court therefore should consider, in determining the amount at stake, "plaintiff's alleged aggregate damages, special damages, punitive damages, and attorneys' fees." Opp'n at 7.  Plaintiff counters that Defendant's speculative numbers are insufficient to satisfy the amount in controversy, although Plaintiff does not provide support for her position that the amount at stake is $75,000.00 or less.  *See generally* Reply.

    1.    *Economic Damages*

Plaintiff seeks "special and compensatory damages including loss of past, present, and future earnings and benefits," Compl. at Prayer for Relief, which are properly considered in the amount in controversy analysis, *see Chavez*, 888 F.3d at 415–16. Defendant argues that Plaintiff likely will seek at least $18,349.00 in backpay.  Opp'n at 7.  Defendant reasonably calculated this estimate by multiplying Plaintiff's ending hourly rate of $16.25 by her average working hours of 21.7 hours per week.  *Id.* (citing Declaration

/ / /

/ / /

of Laura Crisp ("Crisp Decl.," ECF No. 11-2) ¶¶ 4–5).[7] Defendant's conservative estimate of backpay from the date that Plaintiff resigned on January 29, 2020, through January 2021 takes into consideration Plaintiff's vague statement that she obtained new work "in 2021" without stating when in 2021 she became employed, how much she made at her new employment, or how many hours per week she worked. *See id.*; Mot. Mem. at 10. The Court finds Defendant's estimate of $18,349.00 a reasonable and moderate approximation of the past earnings Plaintiff seeks in this litigation.

Although courts have discretion to include front pay in the amount in controversy, *see* Opp'n at 8 (citing *Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1015 (9th Cir. 2010); *Ackerman v. W. Elec. Co., Inc.*, 643 F. Supp. 836, 856 (N.D. Cal. 1986)), the Court finds, in light of the lack of relevant evidence, that any possible front pay is too speculative to include in the amount in controversy analysis. The Court therefore finds Defendant's estimate of $18,349.00 to be a conservative and reasonable estimate of Plaintiff's economic damages at stake in this litigation.

### 2.     *Emotional Distress Damages*

As previously noted, Plaintiff seeks emotional distress damages in this action—namely, compensation for her "severe emotional and mental distress, anguish, embarrassment, sleepless nights, humiliation, degradation, headaches, inconvenience, and loss of enjoyment of life." Compl. ¶ 83. Emotional distress damages are properly considered in the amount in controversy determination. *See Chavez*, 888 F.3d at 415–16

---

[7] Plaintiff objects to the Crisp Declaration for lack of personal knowledge and/or lack of foundation. *See* Opp'n Objs. at 6–10. The Court **OVERRULES** these Objections. Ms. Crisp declares that she is a Senior Paralegal for Alaska and, in that role, has access to personnel and payroll information and personal knowledge of Alaska's processes and policies with respect to such records. *See* Crisp Decl. ¶ 3. She declares she has personal knowledge of the facts within her declaration. *Id.* ¶ 1. The Court finds this sufficient to support Defendant's amount-in-controversy analysis. *See, e.g., Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) ("'Where, as here, a defendant must prove the amount in controversy by a preponderance of the evidence, a declaration or affidavit may satisfy the burden.' Ms. [Crisp] established a sufficient foundation for her testimony, particularly at this early stage of the litigation, by declaring knowledge of the employment data provided in her declaration was based on her normal business responsibilities and personal review of Defendant's personnel records.") (quoting *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM JCX, 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011)).

("[T]he amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious.").

Defendant argues that "the vagueness of plaintiff's pleadings with regard to emotional distress damages should not preclude this Court from noting that these damages are potentially substantial." Opp'n at 8 (quoting *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995)). Defendant points to three sexual harassment cases in the employment context in which the jury verdicts for pain and suffering damages range from $100,000.00 to $3,000,000.00. Opp'n at 9; Def.'s RJN Exs. 1–3. The Court finds these cases to be sufficiently factually similar to the instant matter to be persuasive in assessing the possible amount in controversy.[8] And, while the Court denied judicial notice over Plaintiff's Exhibits L and M, the Court notes that the plaintiff in *Trias v. Associated Construction* requested $200,000.00 in emotional distress damages for alleged sexual harassment. *See* Mot. Mem. at 11; Parker Decl. Ex. L. Plaintiff makes much of the fact that the plaintiff in that sexual harassment case ultimately was awarded less than $75,000.00, *see* Mot. Mem. at 11; however, the amount in controversy is analyzed by how much a plaintiff *seeks*, not by how much she will *recover*.

///

---

[8] In *Meadowcroft v. Silverton Partners Inc.*, No. BC633239 (Cal. Super. Ct. Sept. 11, 2018), the jury awarded two plaintiffs $2.5 million each for emotional distress damages where the supervisor was alleged to have touched and made sexual advances towards the plaintiffs. *See* Opp'n at 9; *see also Meadowcroft*, 2017 WL 10899993 (first amended complaint containing factual allegations). In *Allstot v. City of Los Angeles*, No. BC592492 (Cal. Super. Ct. Apr. 4, 2018), the jury awarded $3 million in pain and suffering damages where the plaintiff's supervisor allegedly subjected her to unwanted sexual remarks, leered at her body, touched her without her consent, and made demeaning comments towards her. *See* Opp'n at 9; *see also Allstot*, 2016 WL 11469651 (second amended complaint containing factual allegations). In *Vandermat v. Creative Stoneworks, Inc.*, No. RG-09-442509 (Cal. Super. Ct. Aug. 17, 2012), the jury awarded $100,000.00 in pain and suffering damages for plaintiff's claims for sex discrimination, sexual harassment, retaliation, and failure to take reasonable steps to prevent harassment, where Plaintiff's supervisor allegedly tried to lay his head in her lap, attempted to hold her hand, and touched her leg. *See* Opp'n at 9; *see also Vandermat*, 2011 WL 10621649 (first amended complaint containing factual allegations). While the Court declined to judicially notice the case summaries submitted by Defendant *supra*, the Court did judicially notice the jury verdict forms and also can and does judicially notice the pleadings in these cases as public records whose accuracy cannot reasonably be questioned.

Plaintiff argues that a defendant cannot cite to a list of cases with large emotional distress damages without analogizing to the claims at issue. Reply at 8 (citing *Barrera v. Albertsons LLC*, 2019 WL 1220764, at *3 (C.D. Cal., 2019)). However, the Court finds Defendant's cited cases have similar facts to the instant case, as Plaintiff alleges that Defendant failed to take reasonable steps to prevent harassment and that her supervisor inappropriately touched her and made unwanted sexual advances, demeaning comments, and gestures towards her. *See generally* Compl. Given the nature and similarity of the conduct at issue in the instant action and the cases to which Defendant cites, the Court finds that it is more likely than not that significant emotional distress damages are at stake in this litigation. Thus, the Court agrees with Defendant that an estimate of $75,000.00 is conservative and reasonable. *See* Opp'n at 9; *see also Andrade v. Arby's Restaurant Grp., Inc.*, 225 F. Supp. 3d 1115 (N.D. Cal. 2016) (on motion for default judgment, awarding plaintiff asserting claims for sexual harassment and violations of state and federal wage laws backpay totaling more than $13,000.00, emotional distress damages of $50,000.00, and attorneys' fees exceeding $42,000.00).

### 3. Punitive Damages

The Court also may consider punitive damages in determining the amount in controversy. *Davenport v. Mutual Benefit Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963). Plaintiff argues that the Court must consider how likely it is that Plaintiff will recover punitive damages to include punitive damages in the amount in controversy. Reply at 9. The Court however, disagrees; in determining the amount in controversy, it is not the Court's duty to find how likely it is that the Plaintiff will recover certain damages, but rather the amount "at stake in the underlying litigation." *See Chavez*, 888 F.3d at 417. Punitive damages are at stake because Plaintiff requested them in her Prayer for Relief and is entitled to them if she prevails on her claims. *See* Compl. at Prayer for Relief; *see also Priest v. Rotary*, 634 F. Supp. 571, 584–85 (N.D. Cal. 1986) (finding exemplary damages available in cases alleging sexual harassment in violation of California law).

/ / /

Defendant notes that punitive damages "should bear a reasonable relation to actual damages, even though no fixed ratio exists to determine the proper proportion." Opp'n at 10 (citing *Rosenor v. Sears, Roebuck & Co.*, 110 Cal. App. 3d 740, 751 (1980)). Defendant claims that punitive damages typically awarded in similar cases are equal to or greater than compensatory damages. Opp'n at 10. Plaintiff contends that punitive damages should be determined by considering "the Defendant's financial condition; plaintiff's vulnerability; and how reprehensible Defendant's conduct was." Reply at 9 (citing *Adams v. Murakami*, 54 Cal. 3d 105, 112 (1991)). Taking into consideration the fact that Defendant is a major international airline, as well as the nature and reprehensibility of the allegations against Defendant and its employee, the Court finds Defendant's suggested ratio of 1:1 for punitive damages to compensatory and emotional distress damages to be a conservative approximation of the punitive damages at stake here. *See* Opp'n at 10. Accordingly, the punitive damages at stake in the instant action alone likely exceed the $75,000.00 amount-in-controversy threshold.

### 4. Attorneys' Fees

The Court also may include attorneys' fees in the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Defendant relies on attorneys' fees awards in factually similar sexual harassment and employment discrimination cases to argue that the attorneys' fees alone at stake here likely exceed the $75,000.00 jurisdictional threshold. Opp'n at 11. Plaintiff argues that the Court cannot base its jurisdictional analysis on speculation and that Defendant fails to support its position adequately. Reply at 10. Although the attorneys' fees alone in the instant case could well exceed $75,000.00, the Court will adopt a conservative estimate of $30,000.00, a number that various district courts within the Ninth Circuit have utilized in assessing the amount in controversy in similar matters. *See* Opp'n at 11 n.7 (citing, *inter alia*, *Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, at *5–6 (C.D. Cal. Mar. 3, 2015)).

/ / /

/ / /

*5. Conclusion*

"Thus, although plaintiff[] ha[s] not made any explicit demands for over [$75,000.00], plaintiff[] make[s] no binding representation that [she] seek[s] any less than that amount in the face of [Defendant's] offer of proof that the [sexual harassment] claims asserted here overwhelmingly result in verdicts well over the jurisdictional amount, and rarely, if ever, result in a verdict less than [$75,000.00]." *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 451 (S.D. Cal. 1995). Considering a conservative minimum of $18,349.00 in economic damages, $75,000.00 in emotional distress damages, $93,349.00 in punitive damages, and $30,000.00 in attorneys' fees, the amount at stake in the underlying action likely is at least $216,698.00, a figure that far exceeds the jurisdictional minimum. Accordingly, the Court **DENIES** Plaintiff's Motion to the extent it argues the amount-in-controversy requirement is not met here.

**C.   Conclusion**

The Court finds that Defendant establishes by a preponderance of the evidence that the Parties are diverse and the amount in controversy is satisfied; therefore, denial of Plaintiff's Motion for Remand is proper.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Plaintiff's Request for Judicial Notice (ECF No. 9-5), **GRANTS IN PART AND DENIES IN PART** Defendant's Request for Judicial Notice (ECF No. 11-3), **SUSTAINS IN PART AND OVERRULES IN PART** the Parties' Objections (ECF Nos. 9-4, 11-4, 13-1, 13-2), and **DENIES** Plaintiff's Motion for Remand (ECF No. 9).

**IT IS SO ORDERED.**

Dated: August 5, 2022

Hon. Janis L. Sammartino
United States District Judge