UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Beatriz TIJERINA,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>ALASKA AIRLINES, INC.,<br><br>　　　　　　　　　Defendant. | Case No.: 22-cv-00203-JLS-BGS<br><br>**DISCOVERY DISPUTE ORDER**<br><br>[ECF No. 30] |

## I. INTRODUCTION

On February 14, 2022, this case was removed to the Southern District of California. (ECF No. 1.) In the Complaint, Plaintiff Beatriz Tijerina indicated that "[i]n or around March 2018, Plaintiff[ ] began working for Defendants as a customer service agent" at the San Diego airport. (ECF No. 1-2 at 8.) The Plaintiff indicated that she "typically worked between 3 A.M. and 9 A.M." (*Id.*)

Plaintiff contends that during her employment for Defendant at the San Diego airport, one of Defendant's lead customer service agents, Mark Buenaflor, allegedly sexually harassed Plaintiff repeatedly. (*Id.* at 8–11.) Plaintiff alleged that "Mr. Buenaflor's sexually harassing conduct continue[d] through or around December 2018 after [Plaintiff] continued to report the conduct to her other managers, her union representative, and HR." (*Id.* at 9.) Eventually, Plaintiff indicated that she "filed a charge of sexual harassment and

discrimination with the EEOC" on or about November 2, 2019, who investigated the matter. (*Id.* at 10.) "On December 23, 2021, the EEOC closed the file and issued Ms. Tijerina her right-to-sue." (*Id.*) Plaintiff allegedly continued to face harassment and retaliation until she was constructively terminated on January 29, 2020. (*Id.* at 11.)

In her complaint, Plaintiff raised the following causes of action: Quid pro quo Sexual Harassment; Hostile Work Environment - Sexual Harassment; Disparate Treatment; Failure to Prevent Harassment, Retaliation and Discrimination; Negligent Retention; Negligent Infliction of Emotional Distress; and Constructive Wrongful Termination in Violation of Public Policy. (*See id.* at 11–19.)

On February 14, 2022, Defendant filed its answer, which presented twenty-two separate defenses. (ECF No. 2.) On May 11, 2022, the Court held an Early Neutral Evaluation Conference and Case Management Conference, which did not settle, and issued a Scheduling Order. (ECF Nos. 15, 16.)

On October 13, 2022, the Court ordered the parties to submit a Joint Brief that addressed their discovery disputes regarding Plaintiff's RFPs and ROGs. (ECF No. 28.) On October 20, 2022, the parties filed their Joint Brief Regarding the Discovery Dispute. (ECF No. 30.) The Court will address the parties' positions during the analysis of the disputes.

## II. LEGAL STANDARD

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"District courts have broad discretion in controlling discovery" and "in determining relevancy." *Laub v. Horbaczewski*, 331 F.R.D. 516, 521 (C.D. Cal. 2019) (citing *Hallett v.*

*Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) and *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005)).

Rule 26(b)(2) also requires the court, on motion or on its own, to limit the frequency or extent of discovery otherwise allowed by the rules if it determines that (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action;" or (3) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

The Advisory Committee emphasized that in adding the proportionality language to Rule 26(b)(1) "the objective is to guard against redundant or disproportionate discovery" and "to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26, Advisory Committee's note to 2015 amendment.

**III.   DISCUSSION**

**A. Requests for Production ("RFP") Disputes – "Me Too" Evidence**

1. <u>Discovery in Dispute</u>

    a. Concerning Requests for Complaints

After meeting and conferring, the parties indicated that Plaintiff agreed to narrow RFP Nos. 1–4 to documents that evidence:

> Any complaints regarding sexual harassment, sexual conduct, sex discrimination, or sex-based retaliation from January 1, 2017 to the present arising at Alaska's San Diego Airport location.

(ECF No. 30 at 3.)  Defendant claimed to have already "produced all formal complaints against Mark Buenaflor from its reporting system and confirmed that no such documents exist in that reporting system concerning Jeff Umali and Alvin Atienza from January 1, 2017 until January 29, 2020 (the day Plaintiff resigned)." (*Id.* at 3–4.)  The parties represented that Defendant has already agreed to "search the email accounts of fourteen agreed upon employees for seventeen agreed upon search terms to identify any additional complaints that may have been made against only Mark Buenaflor, Jeff Umali and Alvin

Atienza (for the same time frame)." (*Id.* at 4.) However, the parties indicated that Defendant did not agree "to perform this same search for complaints concerning any employees other than Buenaflor, Umali, and Atienza." (*Id.*)

b. Concerning Requests for Investigation Records

The parties also met and conferred as to Plaintiff's RFP Nos. 34–37. (*Id.*) The parties also indicated that Plaintiff agreed to narrow these requests to documents that evidence:

> Any investigative records concerning complaints regarding sexual harassment, sexual conduct, sex discrimination, or sex-based retaliation from January 1, 2017 to the present arising at Alaska's San Diego Airport location

(*Id.* at 4–5.) Defendant claimed to have "produced the investigation records pertaining to the complaints [ ] concerning Mark Buenaflor" and indicated that "no such documents exist as they relate to Jeff Umali or Alvin Atienza." (*Id.* at 5.) The parties also indicated that Defendant did not agree "to perform this same search for any investigation records pertaining to complaints made against any employees other than Buenaflor, Umali, and Atienza." (*Id.*)

2. Analysis

Plaintiff argued that complaints of sexual harassment, discrimination, and retaliation from Defendant's employees are discoverable due to this information likely leading to admissible evidence. (ECF No. 30 at 9.) Plaintiff seeks complaints against indirect bad actors filed by employees other than Plaintiff in the same work environment, also referred to as "me-too" complaints, to prove that Defendant, through its managers and HR representatives, had the requisite discriminatory intent and/or knew or should have known of the sexually hostile environment. (*Id.* at 11.) Plaintiff indicated that it is tasked with establishing that upper managers and/or HR knew or should have known of the sexually harassing or discriminatory environment and failed to present or correct it. (*Id.* at 12.) Plaintiff argued that complaints to HR or supervisors regarding sex harassment or discrimination at the San Diego location would prove Plaintiff worked in a hostile work environment Defendant knew or should have known of. (*Id.*) Plaintiff alleged that the

employer's knowledge and failure to act are relevant to the award of punitive damages and to rebut affirmative defenses. (*Id.* at 11–13.) Plaintiff also argued that testimony of other employees about their treatment by the Defendant is relevant to the issue of the employer's discriminatory intent. (*Id.* at 10.)

Defendant stated that the evidence Plaintiff seeks regarding alleged incidents of harassments by a different harasser against a third party is irrelevant to Plaintiff's claims for sexual harassment and failure to prevent sexual harassment. (*Id.* at 16–18.) Defendant claimed that this evidence says nothing about the veracity or validity of Plaintiff's claims. (*Id.* at 17.) Defendant argued that even if there are facts that exist regarding upper managers and/or HR knowing or should have known of the sexual harassment/discriminatory environment, it would still be irrelevant to Plaintiff's complaints and did not put Defendant on actual or constructive notice of the harassment allegations at issue. (*Id.* at 18.) In rebutting Plaintiff's argument about motive/intent, Defendant stated that the focus is whether the victim has been subjected to sexual harassment, not motivation, in a harassment claim and that Defendant's motive/intent is not even at issue. (*Id.* at 19–20.)

Discovery, including discovery of me-too complaints, cannot go beyond the bounds of relevancy and must be proportionate to the needs of the case. *Sanchez v. Master Prot., LP*, No. CV 20-08472-VAP-RAO, 2021 WL 4125856, at *3 (C.D. Cal. Aug. 2021) (citing Fed. R. Civ. Pro. 26(b)(1); *Constance Hanson-Poulson v. Dep't of Def.*, 2020 WL 2043999, at *3 (C.D. Cal. Mar. 2020) (holding a request for production of Me Too complaints without limit to particular complainants, decision makers or geographic location was outside of the scope of relevancy)). Accordingly, the Court addresses both relevance and proportionality below.

a. Relevance

Federal Rule of Evidence 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." The United States Supreme Court

has indicated that the "question whether evidence of discrimination by other supervisors is relevant in an individual [employment discrimination] case is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387–88 (2008).

In *Sprint/United Management Co.*, the plaintiff alleged age discrimination in connection with her layoff and sought to introduce evidence from five other employees who claimed that they, too, had been laid off because of their age (so-called "me-too" evidence). 552 U.S. at 381–82. The me-too witnesses worked in different groups and under different supervisors than the plaintiff. *Id.* at 380–82. The Supreme Court held that evidence of discrimination by other supervisors was not per se admissible or inadmissible, but rather, the relevance and admissibility is "fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Id.* at 387–88.

"[T]he Ninth Circuit has held that in discrimination and retaliation cases plaintiffs may rely upon comparisons with 'similarly situated employees' if the comparison supports an inference that retaliation was the motive." *Brown v. Simpson Strong-Tie Co., Inc.*, No. 2:19-CV-01921-KJM-AC, 2022 WL 2135340, at *2 (E.D. Cal. May 2022) (citing *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010); *Heyne v. Carruso*, 69 F.3d 1475, 1481 (9th Cir. 1995) (reversing trial court's decision to preclude me-too evidence from other employees harassed by defendant, because evidence was probative of defendant's motive for firing plaintiff)). "The Court will not exclude all me-too evidence at trial because there is no per se rule against introducing evidence of others' complaints to support a claim of discrimination; the admissibility of this evidence must be evaluated within the context of the case." *Howard v. Raytheon Co.*, No. CV 09-5742 ABC (EX), 2011 WL 13177257, at *3 (C.D. Cal. Mar. 2011) (citing *Sprint/United Mgmt. Co.*, 552 U.S. at 387). Plaintiffs requesting me-too evidence would need to show that the other individuals also claiming discrimination were similarly situated to Plaintiff, which would

make that evidence probative of Plaintiff's own claim of discrimination. *See Howard*, 2011 WL 13177257, at *3 (citing *Hawn*, 615 F.3d at 1157). "Employees are similarly situated if they are similar 'in all material respects,' that is, 'when they have similar jobs and display similar conduct.'" *Id.* "That is a fact-intensive inquiry that varies depending on the case." *Id.*

The me-too complaints and investigative records that Plaintiff seeks in these requests may be relevant to Plaintiff's causes of action dealing with hostile work environment and failure to prevent harassment, retaliation and discrimination. A successful claim for hostile work environment and failure to prevent harassment, retaliation and discrimination require the Plaintiff to show that Plaintiff was subjected to either harassment, retaliation or discrimination during course of employment, and Defendant failed to take all reasonable steps to prevent it. *See* Judicial Council of California Civil Jury Instructions ("CACI") 2521A; CACI 2527. "Once an employer is informed of the sexual harassment, the employer must take adequate remedial measures." *M.F. v. Pacific Pearl Hotel Management LLC*, 16 Cal.App.5th 693, 701 (2017). Obtaining complaints and investigative records of sexual harassment allegedly occurring to Plaintiff and other similarly situated female employees at the San Diego airport location could shed light on whether Defendant was informed of the conduct occurring within the San Diego airport location and whether Defendant took remedial measures. *See Troy v. State Corr. Inst.-Pittsburgh*, No. 2:11CV1509, 2013 WL 5511265, at *7 (W.D. Pa. Oct. 2013) (finding that other female employees at Defendant's institution who complained of a sexually hostile work environment "may be 'relevant to [. . .] prove whether an employer knew or should have known about [the] harassment.'"); CACI 2521A. Importantly, complaints of sexual harassment could support the proposition that Defendant did have notice of the type of behavior occurring in the workplace. *See Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1258 (11th Cir. 2014) ("An employee who complains about harassment by a coworker must prove either actual or constructive knowledge of the employer."); *Ray v. Lee Brass Foundry, LLC*, No. 5:15-CV-0528-CLS, 2017 WL 2671024, at *17 (N.D. Ala. June 2017)

("When an employer has a clear and published policy that outlines the procedures an employee must follow to report suspected harassment and the complaining employee follows those procedures, actual notice is established. [. . .] Constructive notice, on the other hand, is established when the harassment was so severe and pervasive that management reasonably should have known of it.").

Further, if Defendant knew or should have known of the conduct, the investigative records would be relevant in determining whether Defendant did or did not take immediate and appropriate corrective action. *Okakpu-Mbah v. Postmaster Gen. of the United States of Am.*, No. 1:19-CV-975, 2021 WL 5568100, at *7 (W.D. Mich. July 2021) (citing *Doe v. City of Detroit*, 3 F.4th 294 (6th Cir. June 2021)) ("[T]he Sixth Circuit has emphasized that the employer is liable only if it knew or should have known of the charged ... harassment and failed to implement prompt and appropriate corrective action. [. . .] Steps that would establish a base level of reasonable appropriate corrective action may include promptly initiating an investigation, speaking with the specific individuals identified in the complaint, following up with the complainant, and reporting the harassment to others in management.") (internal quotations omitted); *see also* CACI 2521A.

These complaints and investigative records would also be relevant in Plaintiff trying to prove punitive damages. While punitive damages cannot be used to punish a defendant for harming parties not before the court, evidence of a defendant's harm to others can be offered to show reprehensibility, which is a relevant factor in the punitive damages equation. *See Phillip Morris U.S.A. v. Williams*, 549 U.S. 346, 354–55 (2007); *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 418–19 (2003). In interpreting *State Farm* and other U.S. Supreme Court precedent, the California Supreme Court held that when determining punitive damage liability, it is appropriate for a trier of fact to consider "illegal or wrongful conduct toward others that was similar to the tortious conduct that injured the plaintiff," because "a civil defendant's recidivism remains pertinent to an assessment of culpability. *See Andrews v. Plains All Am. Pipeline, L.P.*, No. CV154113PSGJEMX, 2021 WL 5283945, at *3 (C.D. Cal. Nov. 2021) (citing *Johnson v. Ford Motor Co.*, 35 Cal.4th

1191, 1204 (2005)); *Kaiser v. BMW of N. Am., LLC*, No. C-12-01311 DMR, 2013 WL 1856578, at *2 (N.D. Cal. May 2013) (same). Plaintiff has alleged that she, as well as six others, made complaints of sexual harassment in the same work environment and wrote multiple emails seeking help. Obtaining me-too complaints and investigative records regarding sexual harassment similar to that experienced by Plaintiff could support her claim for punitive damages.

As regards discriminatory animus, the Plaintiff has brought a claim for disparate treatment based on gender discrimination. In her complaint, Plaintiff alleged that she was denied a promotion, denied management assistance in her job duties, and was forced to quit based on the fact that she is a heterosexual woman. (ECF No. 1-2 at 14.) In order for Plaintiff to prevail on her disparate treatment claim, Plaintiff must show that her protected status was a substantial motivating reason for defendant's adverse action. *See* CACI 2500. The Plaintiff did not provide who the person(s) was that committed the allegedly adverse employment actions. However, her complaint indicated it was her supervisor Mr. Buenaflor who denied her a promotion and created such a hostile work environment that she felt compelled to resign. Based on the case law cited by Plaintiff, she is entitled to prior complaints of discrimination made against him, which the Defendant has already provided.

Notwithstanding, Plaintiff argued that despite her repeated complaints, Plaintiff was forced to continue to work under and with those who directly harassed her until her constructive termination and there is allegedly no evidence that Defendant took any corrective action. (ECF No. 30 at 8.) Plaintiff claimed that this harassment often happened in front of other employees every shift and has evidence that six other women also complained to the Defendant about similar sexual harassment at its San Diego location. (*Id.* at 8.) Plaintiff stated that in order for her to prove this, she would need to show that Defendant's supervisors or HR "knew or should have known" of the sexual harassment and "failed to take immediate and appropriate action," as well as that "sex/gender was a substantial motivating reason" for the discrimination or retaliation[.]" (*Id.* at 9.)

Constructive termination is equivalent to a discharge, which is an adverse employment action. *See Mullins v. Rockwell Internat. Corp.*, 15 Cal. 4th 731, 737, 936 P.2d 1246, 1249 (1997) ("We have said 'a constructive discharge is legally regarded as a firing rather than a resignation.'"); *St. Myers v. Dignity Health*, 44 Cal.App.5th 301, 315 (2019) ("Constructive discharge, like actual discharge, is a materially adverse employment action."). The requested discovery of complaints of harassment by others could be relevant to show that Defendant was on notice of the sexual harassment in her work environment. The investigative reports could tend to prove whether Defendant took remedial action. If a pattern of sexual harassment existed and Defendant did nothing to remedy it, the Defendant's discriminatory animus towards women may be inferred from such conduct. Therefore, this discovery is relevant.

Additionally, Plaintiff alleged that she was constructively terminated in violation of public policy. (*See* ECF No. 1-2 at 18–19.) To establish constructive wrongful termination in violation of public policy, Plaintiff must prove in pertinent part that the Defendant intentionally created or knowingly permitted these working conditions and that these working conditions were so intolerable that a reasonable person in Plaintiff's position would have had no reasonable alternative except to resign. *See* CACI 2432. The requested discovery is also relevant to show whether the Defendant knew of the alleged sexual harassment in the work environment yet permitted it to exist.

### b. Proportionality

As detailed above, discovery must not only be relevant, but it must also be proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1). "[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is

more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Regarding Plaintiff's requests, she is seeking any complaints and any investigative records arising at Alaska's San Diego Airport location that concern sexual harassment, sexual conduct, sex discrimination, or sex-based retaliation from January 1, 2017 to the present. (ECF No. 30 at 3–5.) As discussed above, this discovery is relevant and can support several important issues and factual allegations made in the Complaint and is likely to be beneficial. *See* Rule 26(b)(1) (listing among factors to consider for proportionality, "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit).

Defendant did not address whether these requests for complaints or investigative records would impose any burden that were disproportionate to the needs of the case. (*See* ECF No. 30 at 22.) However, the requests for these complaints and investigative records as narrowed, are still overbroad. The requests are not narrowly tailored to only complaints and investigative records regarding similarly situated individuals, in this case Defendant's customer service agents at the San Diego Airport location. *See Diaz v. Tesla, Inc.*, No. 3:17-CV-06748-WHO, 2020 WL 2614866, at *4 (N.D. Cal. May 2020) (the Court agreed with Plaintiff Diaz in part to allow some individuals to testify about unrelated incidents of harassment if the testimony could tend to establish that Tesla had notice of the racially harassing environment. The Court then stated that "[g]iven that Patterson and Diaz's work overlapped in all respects, the jury could rely on testimony about Patterson's alleged complaints to Romero to conclude that Tesla had notice of the harassing environment and, thus, a duty to remediate[.]").

Additionally, while the Complaint alleged that Plaintiff worked as a customer service agent for Defendant from March 2018 to January 2020, (ECF No. 1-2 at 8–11), Plaintiff seeks complaints and investigative records regarding Defendant's current and

former employees beginning over a year prior to Plaintiff starting her job with Defendant up until the present.

"The Court can limit relevant discovery based on proportionality, including under Rule 26(b)(1), based on the 'importance of the issues at stake in the action' and the importance of the discovery in resolving the issues." *In re Outlaw Lab'ys, LP Litig.*, No. 18CV840-GPC-BGS, 2020 WL 1083403, at *15 (S.D. Cal. Mar. 2020). Accordingly, the Court narrows the RFP Nos. 1–4 to only complaints regarding sexual harassment, sexual conduct, sex discrimination, or sex-based retaliation that were made by customer service agents from March 1, 2018 to January 29, 2020 arising at Defendant's San Diego Airport location.

Further, the Court narrows the RFP Nos. 34–37 to only investigative records concerning complaints of sexual harassment, sexual conduct, sex discrimination, or sex-based retaliation that were made by customer service agents from March 1, 2018 to January 29, 2020 arising at Defendant's San Diego Airport location.

**B. Special Interrogatories ("ROG") Dispute – Contact Information**

1. <u>Discovery in Dispute</u>

Plaintiff originally propounded Special ROG Nos. 8, 10–13, which sought the identities and contact information of Defendant's employees during the relevant time period. (*Id.*) After meeting and conferring, the parties indicated that Plaintiff agreed to narrow these ROGs to seek only:

> 1) The names and contact information of "Defendant's current and former employees who worked at Alaska's San Diego Airport location during the same time as Plaintiff's employment and who held the same position as Plaintiff ('Customer Service Agent')." [ ]; and
>
> 2) The names and contact information of Defendant's current and former employees who made complaints of sexual harassment or sexual conduct between January 1, 2017 to present at Alaska's San Diego Airport location.

(*Id.* at 6.) The parties indicated that Defendant has not produced any names or contact information in response to these interrogatories. (*Id.*)

///

2. <u>Analysis</u>

Plaintiff is seeking contact information for Defendant's current and former employees that either: (1) worked at Defendant's San Diego Airport location during the same time as Plaintiff's employment and who held the same position as Plaintiff; or (2) made complaints of sexual harassment or sexual conduct between January 1, 2017 to present at Defendant's San Diego Airport location. (ECF No. 30 at 6.)

Plaintiff argued that "[a]ny potential privacy rights here are outweighed by Plaintiff's need for evidence to prosecute her claims via similar complaints." (*Id.* at 12.) Plaintiff maintained that "discovery seeking names and addresses of witnesses does not implicate any serious privacy concern sufficient to outweigh the right to discovery." (*Id.*)

Defendant stated that "it is true that Plaintiff may be entitled to the contact information of "witnesses," but Plaintiff has not identified the witnesses whose contact information she seeks or what those individuals are alleged to have witnessed." (*Id.* at 21.) Defendant claimed that Plaintiff has "made no effort to limit the request to employees who she believes have knowledge about her allegations." (*Id.* at 21–22.) Defendant maintained that Plaintiff's requests "imposes burdens that are disproportionate to the needs of the case" because the requests are not targeted to the claims in this case and would implicate significant privacy concerns. (*Id.* at 22.)

"Courts have frequently recognized that individuals have a substantial interest in the privacy of their home." *Cnty. of Los Angeles v. Los Angeles Cnty. Emp. Rels. Com.*, 56 Cal. 4th 905, 927 (2013). This includes addresses and telephone numbers. *Puerto v. Superior Court*, 158 Cal.App.4th 1242, 1252 (2008) ("It is most probable that the employees gave their addresses and telephone numbers to their employer with the expectation that they would not be divulged externally except as required to governmental agencies or to benefits providers. This is a reasonable expectation in light of employers' usual confidentiality customs and practices.").

"[W]hile personal identifying or contact information is entitled to some privacy protection, disclosing it is not necessarily a serious invasion of privacy." *Godinez v. Alta-*

*Dena Certified Dairy*, No. CV151652RSWLSSX, 2016 WL 6917270, at *3 (C.D. Cal. Jan. 2016) (citing *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal. 4th 360, 372 (2007) ("Such disclosure involves no revelation of personal or business secrets, intimate activities, or similar private information, and threatens no undue intrusion into one's personal life, such as mass-marketing efforts or unsolicited sales pitches."); *Puerto*, 158 Cal. App. 4th at 1253 ("[T]he requested information, while personal, is not particularly sensitive, as it is merely contact information, not medical or financial details, political affiliations, sexual relationships, or personnel information.")).  In fact, "some cases courts have found that names, addresses, and telephone numbers are appropriate for production, 'because such disclosure does not involve revelation of personal secrets, intimate activities, or similar private information, which may constitute serious invasions of privacy.'" *Baptiste v. Lids*, No. C-12-5209 PJH, 2013 WL 5708848, at *5 (N.D. Cal. Oct. 2013) (citing *Murphy v. Target Corp.*, 2011 WL 2413439, at *4 (S.D. Cal. June 2011) (ordering defendant to produce the names, addresses, and telephone numbers of putative class members); *Tierno v. Rite Aid Corp.*, 2008 WL 3287035, at *3 (N.D.Cal. July 2008) (same)).

"While it is unlikely that the employees anticipated broad dissemination of their contact information when they gave it to [Alaska Airlines], that does not mean that they would wish it to be withheld [. . .] from plaintiffs seeking relief for violations of employment laws in the workplace that they shared."  *Puerto*, 158 Cal. App. 4th at 1253 (citation and internal quotations omitted).  Consequently, where nonparties' identities are relevant to the action, e.g. because they have suffered similar injuries, a party may be compelled to disclose their names, addresses and phone numbers, provided the nonparties are notified and given an opportunity to object to disclosure of their contact information. *Foster v. ScentAir Techs., Inc.*, No. 13-CV-05772-THE-MEJ, 2014 WL 4063160, at *4 (N.D. Cal. Aug. 2014) (citing *Pioneer Electronics (USA), Inc. v. Sup.Ct. (Olmstead)*, 40 Cal.4th 360, 367 (2007)).

While the Court agrees that contact information is entitled to some privacy protection, the Court finds that the production of the nonparties' contact information are appropriate in these circumstances, provided that these nonparties are notified and given the opportunity to object to the disclosure of their contact information. These nonparties' contact information would be relevant in that these nonparties would either have witnessed the alleged harassment of the Plaintiff or would have suffered the same alleged harassment while working as a customer service agent around the same time that Plaintiff worked at the San Diego airport location.

However, a party may only obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Therefore, the Court addresses both relevance and proportionality below.

### a. Relevance

As to the relevancy of this contact information, the issues raised in this dispute involve quid pro quo sexual harassment; hostile work environment - sexual harassment; disparate treatment; failure to prevent harassment, retaliation and discrimination; negligent retention; negligent infliction of emotional distress; and constructive wrongful termination in violation of public policy. (*See* ECF No. 1-2 at 11–19.) Additionally, the factual allegations incorporated in all of Plaintiff's claims allege that not only did she make complaints to HR and managers about this type of behavior, but that other employees also made complaints and Defendant allegedly did nothing about it. (*Id.* at 8–11.) The Court addressed in the previous section that to the extent that there are me-too complaints, as well the investigative records that followed these complaints, they are relevant. However, the requests were narrowed to only the complaints, as well as investigative records that followed, regarding sexual harassment, sexual conduct, sex discrimination, or sex-based retaliation that were made by customer service agents from March 1, 2018 to January 29, 2020 arising at Defendant's San Diego Airport location. (*See* Section III(A)(2).) Therefore, the contact information of these complaining witnesses are relevant.

Plaintiff alleged that Mr. Buenaflor's harassment would happen nearly every shift. (ECF No. 1-2 at 9.)  What follows from Plaintiff's causes of action and factual allegations is her claim that nearly every shift Plaintiff allegedly was harassed in the workplace where other people may have witnessed the alleged harassment.  Obtaining contact information of percipient witnesses to her alleged harassment could lead to discoverable information that is relevant to Plaintiff's claims.  Fed. R. Civ. P. 26(b)(1).

### b. Proportionality

However, as for proportionality, requesting the contact information for all of Defendant's current and former employees that either: (1) worked at the same time and position as Plaintiff at Defendant's San Diego Airport location, or (2) made complaints of sexual harassment or sexual conduct between January 1, 2017 to present at Defendant's San Diego Airport location, is overbroad and not proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).[1]

In her Complaint, Plaintiff indicated that she began working at Defendant's San Diego location in March 2018, typically between 3:00 AM and 9:00 AM, and made allegations that she was harassed nearly every shift that she worked until January 29, 2020, the date Plaintiff alleged that she was constructively terminated.  (ECF No. 1-2 at 8–11.)  The inclusion of all of Defendant's current and former employees that worked at the same time as Plaintiff at the San Diego location with the same job title could lead to the inclusion of contact information for people that did not exactly work with the Plaintiff and did not witness the alleged incidents at issue.  Defendant also asserted that providing this contact information "imposes burdens that are disproportionate to the needs of the case," (ECF No. 30 at 22), but provides the Court with no further explanation.

---

[1] In the previous section, the Court limited the RFPs at issue to only complaints regarding sexual harassment, sexual conduct, sex discrimination, or sex-based retaliation, as well as the investigative records that followed the complaints, that were made by customer service agents from March 1, 2018 to January 29, 2020 arising at Defendant's San Diego Airport location.  (*See* Section III(A)(2)(b).)

Defendant's current or former employees still may have an expectation of privacy in their contact information, especially since Plaintiff has not identified any witnesses and it is not clear whether they have any information relevant to Plaintiff's claims. However, Plaintiff is entitled to pursue her case, but is impeded by the fact that Defendant has the contact information of potential witnesses and Plaintiff does not have the same relative access to the relevant contact information as Defendant.

Accordingly, to balance these competing interests, the Court finds it appropriate to narrow these ROGS at issue. The Court narrows ROG No. 1 (*see* ECF No. 30 at 6) to only providing the contact information of Defendant's current and former customer service agents that worked during the time period of March 1, 2018 to January 29, 2020 at the San Diego airport location between the times of 3:00 AM to 9:00 AM. The Court narrows ROG No. 2 (*see id.*) to only providing the contact information of Defendant's current and former customer service agents that made complaints regarding sexual harassment, sexual conduct, sex discrimination, or sex-based retaliation from March 1, 2018 to January 29, 2020 arising at Defendant's San Diego Airport location. (*See* Section III (A)(2)(b).)

## IV.   CONCLUSION

Based on the reasons discussed above, Defendant shall timely provide the discovery ordered forthwith. Since the Court tolled the fact discovery deadline as to the discovery subject to these pending discovery disputes, (*see* ECF No. 29 at 2), the Court extends the fact discovery deadline until **December 8, 2022** only for the discovery addressed in this dispute. **IT IS SO ORDERED**.

Dated:  November 7, 2022

Hon. Bernard G. Skomal
United States Magistrate Judge