1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11   BEATRIZ TIJERINA, individually,        Case No.:  22-CV-203 JLS (BGS)

12                          Plaintiff,      **ORDER ON MOTIONS *IN LIMINE***

13   v.
                                            (ECF Nos. 72, 73, 74, 75, 76, 77, 78, 79)
14   ALASKA AIRLINES, INC.,
     an Alaska Corporation; and DOES 1–50,
15
                            Defendant.
16

17

18        Presently before the Court are Plaintiff Beatriz Tijerina's ("Plaintiff") and Defendant

19   Alaska Airlines, Inc.'s ("Defendant" or "Alaska") Motions *in Limine* ("MILs" or "Mots.,"

20   ECF Nos. 72–79).  On January 10, 2024, the Court held a hearing on these motions and

21   issued tentative rulings.  Having considered the Parties' moving papers, the arguments

22   made at the hearing, and the applicable law, the Court **GRANTS IN PART AND DENIES**

23   **IN PART** the MILs, as discussed below.  However, the Court emphasizes that, given the

24   nature of motions *in limine*, the Court's rulings are necessarily tentative and may be

25   revisited during trial.  *See United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999)

26   ("The district court may change its ruling at trial because testimony may bring facts to the

27   district court's attention that it did not anticipate at the time of its initial ruling.").

28   / / /

**PLAINTIFF'S MOTIONS *IN LIMINE***

**I.     Motion *in Limine* No. 1 to Exclude Speculative and Conclusory Testimony Regarding the Actual Duties and Authority of Lead Customer Service Associates**

Plaintiff's first MIL seeks to preclude witnesses lacking personal knowledge from testifying about the actual duties and authority of lead customer service associates ("Lead CSAs"), including Mark Buenaflor ("Buenaflor")—Plaintiff's alleged harasser.  *See* ECF No. 72-1 at 2–3.  Specifically, Plaintiff seeks to prevent high-ranking executives who lack personal knowledge from testifying about Buenaflor's role and the operations of the San Diego airport.  *See id.* at 3–4.  The only witness named in the Motion is Steven Zwerin ("Zwerin"), Alaska's director of employee relations.  *See id.*  In his deposition, Zwerin stated that "Alaska Airlines' practice is that leads have no authority to hire, fire, or discipline employees," and that—in his opinion—Lead CSAs were not supervisors.  *Id.* at 4.  Per Plaintiff, Zwerin also "admitted he had no personal knowledge of what actions Mr. Buenaflor took or even could take while working at the San Diego Airport."  *Id.*

Plaintiff presents three arguments to support this Motion.  First, Plaintiff claims that because Zwerin lacks personal knowledge regarding Buenaflor's authority and actions, Zwerin's testimony is speculative and runs afoul of Federal Rule of Evidence ("FRE") 602. *See id.*  Plaintiff also contends that Zwerin's personal belief regarding whether Lead CSAs constitute supervisors is an inadmissible lay opinion under FRE 701.  *See id.* at 5 ("Rule 701(a) contains a personal knowledge requirement." (quoting *United States v. Lopez*, 762 F.3d 852, 864 (9th Cir. 2014))).  Lastly, Plaintiff turns to FRE 403 and argues that "speculative" testimony from Alaska's upper management is unfairly prejudicial because (1) it may be viewed by the jury as inherently trustworthy; and (2) and would constitute a "biased opinion, formed after the fact" for defensive purposes.  *Id.*

Meanwhile, Defendant argues that Zwerin's testimony need not be based on personal knowledge in light of Federal Rule of Civil Procedure ("FRCP") 30(b)(6), which allows a company to designate someone to speak on its behalf about information available to the it. ECF No. 86 at 3.  Defendant contends "corporate designee[s]," like Zwerin, "may testify

to matters within the scope of the Rule 30(b)(6) deposition topics even if the witness lacks personal knowledge." *Id.* Defendant also argues that the Motion is too vague and overly broad to the extent it seeks to exclude any "speculative" testimony from witnesses beyond Zwerin. *Id.* at 5–6.

The question posed by the present Motion is more complex than either party lets on. FRCP 30(b)(6) allows an organization to designate "one or more officers, directors, or managing agents" to "testify about information known or reasonably available to the organization" at a deposition. "[A] Rule 30(b)(6) witness is essentially a spokesperson for the company, and testifies in a corporate rather than personal capacity." *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, No. 11-CV-8808, 2023 WL 5647204, at *7 (N.D. Ill. Aug. 31, 2023). The deposition testimony of such a witness is thus "determined by the limits of the company's knowledge, not the individual's personal knowledge." *Persian Gulf Inc. v. BP W. Coast Prod. LLC*, 632 F. Supp. 3d 1108, 1128 (S.D. Cal. 2022). However, "case authority is split on the issue of whether a corporate designee may testify concerning matters outside of his or her personal knowledge *at trial*." *Lister v. Hyatt Corp.*, No. C18-0961JLR, 2020 WL 419454, at *2 (W.D. Wash. Jan. 24, 2020) (emphasis added). The Ninth Circuit has yet to weigh in on this issue. *See id.* (finding "no authoritative ruling from the Ninth Circuit" on this topic).

Courts generally agree that when a party calls the *opposing side's* 30(b)(6) designee at trial, the designee may provide testimony not based on personal knowledge if said testimony stays within the bounds of the 30(b)(6) deposition. *See, e.g.*, *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 434 (5th Cir. 2006). This conclusion follows from FRCP 32(a)(1), under which a deposition may be used against a party at trial if "(A) the party was present or represented at the taking of the deposition or had reasonable notice of it"; (B) the deposition is "used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying"; and "(C) the use is allowed by Rule 32(a)(2) through (8)." The first condition is met where a corporate party offers its own designee. The second also poses no barrier under these circumstances, as statements

3

made during a FRCP 30(b)(6) deposition constitute "statement[s] of a party opponent" and are thus non-hearsay under FRE 801(d)(2). *Kraft Foods*, 2023 WL 5647204, at *8. And the third requirement is handled by FRCP 32(a)(3),[1] which allows "[a]n *adverse party*" to "use for any purpose the deposition of a party or anyone who, when deposed, was the party's . . . designee under Rule 30(b)(6)." Fed. R. Civ. P. 32(a)(3) (emphasis added).

FRCP 30(b)(6) designees may not, however, offer testimony at trial that consists of "hearsay not falling within one of the authorized exceptions." *Brazos River*, 469 F.3d at 435. And the exceptions provided by FRE 801(d)(2) and FRCP 32(a)(3) do not apply when an organization wishes to elicit testimony from its own corporate designee. *See Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 907–08 (5th Cir. 2010) (holding where testimony is not sought by the adverse party, "a corporate representative may not testify to matters outside his own personal knowledge 'to the extent that information [is] hearsay not falling within one of the authorized exceptions.'" (alteration in original) (quoting *Brazos River*, 469 F.3d at 435)); *McGriff Ins. Servs., Inc. v. Madigan*, No. 5:22-CV-5080, 2022 WL 16709050, at *2 (W.D. Ark. Nov. 4, 2022) ("[W]hen a party seeks to introduce its own 30(b)(6) deposition testimony at trial . . . 'it may be in conflict with both [FRCP] 32(a)(1)(B) and [FRE] 602.'" (quoting *VIIV Healthcare Co. v. Mylan Inc.*, 2014 WL 2195082, at *2 (D. Del. May 23, 2014))).

In other words, "Rule 30(b)(6) does not eliminate Rule 602's personal knowledge requirement" for trial witnesses. *Brooks v. Caterpillar Glob. Mining Am., LLC*, No. 4:14CV-00022-JHM, 2017 WL 3426043, at *5 (W.D. Ky. Aug. 8, 2017). This is not surprising, as FRCP 30(b)(6) is designed to streamline the discovery process, *SEC v. Hemp, Inc.*, No. 216CV01413JADPAL, 2018 WL 4566664, at *3 (D. Nev. Sept. 24, 2018), not alter the rules of evidence to be applied at trial.

---

[1] Though FRCP 32(a)(3) contemplates the use of a 30(b)(6) designee's deposition, courts have found that the same rules apply to a party's attempt to have the designee testify live at trial. *See, e.g.*, *Brazos River*, 496 F.3d at 434 ("Although there is no rule requiring that the corporate designee testify 'vicariously' at trial, as distinguished from at the rule 30(b)(6) deposition, if the corporation makes the witness available at trial he should not be able to refuse to testify to matters as to which he testified at the deposition . . . .").

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's first Motion. Zwerin's testimony—including any testimony regarding Buenaflor's actual duties, authority, and conduct at the San Diego Airport—will be admissible only "to the extent such information is based on [his] personal knowledge and not on hearsay, or to the extent that an exception to the hearsay rule applies."[2] *Id.* The same holds true for Zwerin's opinion regarding whether Lead CSAs should be considered supervisors. But to the extent Plaintiff seeks to exclude testimony from unspecified witnesses beyond Zwerin, her Motion is overly broad. *See, e.g.*, *In re Homestore.com, Inc.*, No. CV 01-11115 RSWL CWX, 2011 WL 291176, at *13 (C.D. Cal. Jan. 25, 2011) (denying MIL where defendant "ha[d] not provided the Court with the specific evidence claimed to be inadmissible").

## II.  Motion *in Limine* No. 2 to Exclude Hearsay and Conclusory Testimony Regarding Defendant's Investigations and Disciplinary Actions

Plaintiff's second motion *in limine* seeks to preclude Defendant from presenting any evidence regarding Alaska's response to Plaintiff's harassment complaints that is "not grounded in a witness's personal knowledge." *See* ECF No. 72-2 at 4. Specifically, Plaintiff asks the Court to prevent "a high-level Alaska employee" from testifying (1) about "Alaska's 'usual' practices regarding investigating complaints," and (2) "that Alaska undertook such [an] investigation in response to Plaintiff's complaint." *Id.* Plaintiff argues that any such testimony would be reliant on written reports prepared by lower-level employees and thus constitute hearsay. *See id.* at 4. Plaintiff also contends that "[s]peculative testimony" about Alaska's "ideal" response to a complaint says little about what Defendant "actually did." *Id.* at 5. Plaintiff otherwise relies on the same arguments made in her first Motion regarding personal knowledge and the risk of unfair prejudice.

Reading Plaintiff's second Motion to again target Zwerin, Defendant repeats the same Rule 30(b)(6) argument it made in opposition to Plaintiff's first Motion *in limine*.

---

[2] The Court clarifies that it does not decide in this Order whether Defendant can successfully apply a hearsay exception to admit the testimony at issue. The Court only holds that such testimony cannot be admitted unless Defendant does so.

*See* ECF No. 86-1 at 4–6.  Defendant also contends that evidence relating to Alaksa's investigation is not hearsay, as it is offered to show Defendant took remedial steps—not for the truth of any statement made during the investigation.  *Id.* at 5.  Finally, Defendant renews another of its prior arguments and accuses the instant Motion of failing to identify "specific testimony that [Plaintiff] believes should be excluded." *Id.* at 6.

The Court will **GRANT IN PART AND DENY IN PART** Plaintiff's second MIL. Presuming Plaintiff seeks to exclude testimony from Zwerin, the reasoning provided in Section I, *supra*, applies—Defendant cannot use FRCP 30(b)(6) to wholesale avoid the personal knowledge requirement.  As a result, Zwerin may testify to Alaska's investigatory practices only if he has personal knowledge on those topics or a hearsay exception applies. The Court is unable to rule on the admissibility of any particular statement or investigatory record at this time, however, as the Parties have not adequately briefed questions of knowledge and hearsay regarding specific pieces of potential evidence.  Such challenges must thus wait for trial.  Lastly, to the extent Plaintiff hopes to exclude testimony from other, unnamed witnesses, her Motion is again overbroad.  *See M.H. v. Cnty. of Alameda*, No. 11-CV-02868-JST, 2015 WL 894758 (N.D. Cal. Jan. 2, 2015) ("The purpose of a [MIL] is to admit or preclude *specific* documents.  The Court cannot 'make evidentiary determinations in a vacuum.'" (citations omitted and emphasis added) (quoting *CadleRock Joint Venture, L.P. v. Royal Indem. Co.*, 872 F. Supp. 2d 592, 602 (N.D. Ohio 2012))).

**III.   Motion *in Limine* No. 3 to Exclude Defendant's Investigations of Harassment and Any Other Records That Were Requested but Not Produced in Discovery**

In her third Motion, Plaintiff seeks to preclude Defendant from introducing records that were not produced during discovery, including previously undisclosed evidence regarding Alaska's harassment investigations.  *See* ECF No. 72-3.  Plaintiff, invoking FRCPs 26 and 37, explains that a party must provide the names of witnesses and copies of documents that it may use at trial and argues that undisclosed material should be excluded. *Id.* at 2.  Alaska counters by claiming to have no intention of using evidence "that has been requested . . . but not produced."  ECF No. 86-2 at 3.  Defendant also argues that the

Motion is impermissibly vague, as it does not target specific evidence. *See id.* at 2.

In light of Defendant's representation that it will not offer any undisclosed evidence at trial, the Court **DENIES** Plaintiff's third motion as moot. The Court also notes once more that, in failing to identify the particular evidence she seeks to exclude, Plaintiff's Motion is overbroad and, at best, premature. *See Forbes v. Cnty. of Orange*, No. SACV111330JGBANX, 2013 WL 12165672, at *7 (C.D. Cal. Aug. 4, 2013) ("Defendant . . . seeks to exclude 'any evidence' and 'any witnesses' not properly disclosed pursuant to Rule 26. Because this request lacks specificity, it is denied as overbroad." (citation and emphasis omitted)).

## IV. Motion *in Limine* No. 4 to Exclude Unemployment, Disability, and/or Worker's Compensation Payments to Plaintiff from Collateral Sources

Plaintiff's fourth motion seeks to prevent Defendant from introducing evidence that Plaintiff "received any unemployment, disability, or worker's compensation payments" after leaving her position at Alaska. ECF No. 72-4 at 2–3. "Under both federal procedural law and California substantive law," she argues, "a plaintiff's damages may not be reduced based on benefits received from a collateral source." *Id.* at 2. Plaintiff also contends that the receipt of such benefits is "not relevant to the harm [she] suffered and her resulting damages," and thus should not be admitted under FREs 401 and 403. *Id.* at 3.

Defendant agrees that evidence of collateral source payments is irrelevant here, but on different grounds. In Defendant's view, Plaintiff's surviving claims do not stem from her separation from Alaska and thus involve no lost wages. In other words, Defendant argues collateral source payments have no bearing on Plaintiff's alleged damages. *See* ECF No. 86-3 at 1–2. As the Parties agree that collateral source payments received by Plaintiff should not be admitted, the Court **GRANTS** Plaintiff's fourth Motion *in Limine*.

## V. Motion *in Limine* No. 5 to Exclude Impermissible Character Evidence from Defendant's Employees Regarding Lack of Harassment by Buenaflor

In her fifth and final Motion, Plaintiff asks the Court to exclude two forms of so-called "not me too" evidence: (1) evidence of "Buenaflor's non-discriminatory treatment

of other employees," if used "as evidence Buenaflor did not harass Plaintiff"; and (2) evidence of "Defendant's non-discriminatory treatment of others," if used "to establish that [Alaska] did not harass or fail to prevent harassment of Plaintiff."  ECF No. 72-5 at 2.

Regarding the first category, Plaintiff relies on Rule 404(b)(1)'s prohibition on using character evidence to make a propensity argument.  *See id.* at 3–4.  In other words, Plaintiff seeks to prevent Defendant from using "evidence of Buenaflor's positive or neutral treatment of women" to show that Buenaflor is not the harassing sort.  *See id.* at 4.  As to the second category of evidence, Plaintiff similarly argues that "an employer may not use 'good acts' or 'fair treatment' of others to show that it has not discriminated against an individual." *Id.* at 2 (citing *Connecticut v. Teal*, 457 U.S. 440, 455 (1982)).

Alaska "does not disagree that 'not me too' evidence should be excluded," but the company still asks the Court to deny Plaintiff's fifth Motion.  ECF No. 86-4 at 1.  Defendant claims to have no intention of introducing "good acts" or "fair treatment" evidence to "show that a person has a propensity for a certain behavior."  *Id.*  Defendant nevertheless opines that the Motion is overbroad, arguing that excluding all prior "good" acts goes too far because such evidence may be admissible under one of Rule 404(b)'s "numerous exceptions."  *Id.*  For example, prior acts may properly be used to rebut claims an opposing party makes "as the trial progresses."  *Id.*  For the same reason, Defendant claims that Plaintiff's "categorical[]" fifth Motion is also premature.  *Id.*

Plaintiff's fifth Motion *in Limine* is **GRANTED IN PART AND DENIED IN PART**.  The Parties agree that Buenaflor's prior "good acts" and Alaska's "non-discriminatory treatment" of others cannot be used to make propensity arguments.[3]  However, Plaintiff's Motion is otherwise overbroad and premature because it attempts to exclude *all* prior acts evidence.  *See, e.g.*, *United States v. Richardson*, No. CR 23-19-BLG-SPW, 2023 WL 5163934, at *1 (D. Mont. Aug. 11, 2023).  Non-propensity uses of such

---

[3] The Parties spend much of their briefs disputing whether "me too" evidence is any more or less admissible than "not me too" evidence.  *See* ECF No. 72-5 at 4–5; ECF No. 86-4 at 2–3.  The Court addresses that issue while discussing Defendant's fourth MIL, which focuses on me-too evidence.

evidence may be permissible in the context of trial, at which point the Court will be better equipped to handle targeted admissibility challenges.  *See Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525PSGPJWX, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010) ("[M]otions *in limine* should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial.").

**DEFENDANT'S MOTIONS *IN LIMINE***

**I.      Motion *in Limine* No. 1 for an Order Excluding Plaintiff from Introducing Any Witnesses at Trial That Were Not Disclosed Pursuant to FRCP 26**

In its first Motion in *Limine*, Defendant asks the Court to preclude testimony from the twenty-six witnesses[4] who "were not properly identified in her Initial Disclosure" but that Plaintiff "intends to call at trial."  ECF No. 73-1 at 3.  Defendant cites (1) FRCP 26(a)(1)(A)(i), under which a party must identify in her initial disclosures individuals that she may use to make her case; (2) FRCP 26(e), which requires parties to supplement their initial disclosures if they learn that said disclosures are incomplete; and (3) FRCP 37(c)(1), which prohibits parties from using undisclosed information or witnesses at trial.  *Id.* at 3–4. Defendant argues that it prepared for this case "based on the information Plaintiff disclosed in her Initial Disclosures" and would be "incurably prejudice[d]" by the "trial testimony of a surprise witness."  *Id.* at 6.

Countering, Plaintiff notes that FRCP 26(e) requires a party to update its initial disclosures *unless* "the additional . . . information has not otherwise been made known to the other parties during the discovery process."  ECF No. 87 at 1 (quoting Fed. R. Civ. P.

---

[4] Defendant states there are thirty-one such witnesses, but in its Motion it listed only twenty-six.  *See* ECF No. 73-1 at 3.  The twenty-six witnesses include Maria Venegas, Jennifer Santos Inacio, Denise Ortega, Terry Benavidez, Veronica Mariah Evers, Yvette Natalie Arriaga Viveros, Richard Hines, Joe Wonderly, Gerardo Michael Tijerina, Lauren Christina Bond, Marco Junior Deltoro Puerto, Payton Holly Hicks, Anne Cox, Mark Melden, Dede Echitey, Vicky Gay Deaton, Shawna Melva, Andy Schneider, Danny Flores, Jenn Mann, Michelle Kirschbaum, Sebastino Pizzo, Debbie Tucker, Tennille Taylor, Krystal Crespo, and Christy Velasquez.  *Id.* at 3 n.1 (citing ECF No. 67-2).

26(e)(1)(A)).   Here, Plaintiff contends that the witnesses at issue were "otherwise disclosed" during discovery, *id.* at 2–3, and she provides a chart detailing when those disclosures occurred, *see id.* at 7–22.   Plaintiff also points out that FRCP 37(c) has an exception allowing parties to use undisclosed evidence if "the failure was substantially justified or is harmless."   Fed R. Civ. P. 37(c)(1).   Plaintiff further argues that because Defendant acknowledges being aware of the topics to which the witnesses will testify, Defendant's claims of unfair surprise are insincere.   *See* ECF No. 87 at 7.

The Court will **DENY** Defendant's first Motion.   For one thing, the Court previously denied Defendant's attempt to strike Maria Venegas and Jennifer Inacio after concluding they had both been "otherwise disclosed" in accordance with FRCP 26(a).   *See* ECF No. 60 at 11–12.   Defendant neither acknowledges this prior ruling nor provides any reason for changing course now.   More broadly, the Court is skeptical of Defendant's attempt to use a relatively vague motion *in limine* to challenge the admissibility of this many witnesses. In contrast with Plaintiff, who presents documentation showing when each witness was mentioned or purportedly otherwise disclosed during discovery, Defendant makes no effort to explain why any specific witness was not sufficiently disclosed.   The Court cannot evaluate the admissibility of each witness with the materials provided and declines to exclude the group wholesale.   The Court instead encourages the Parties to work together on shortening the list of potential witnesses.   After that process, the Court will entertain a more targeted challenge from Defendant if disputes remain.

## II.   Motion *in Limine* No. 2 to Exclude Evidence and Argument Concerning Dismissed Claims

Defendant's second Motion seeks to preclude Plaintiff from introducing evidence that was relevant to her three dismissed claims (quid pro quo sexual harassment, disparate treatment, and wrongful termination), but—in Alaska's view—has no bearing on her surviving causes of action (hostile work environment, failure to prevent harassment, negligent retention, and negligent infliction of emotional distress ("NIED")).   *See* ECF No. 74-1 at 3–4.

In particular, Defendant asks the Court to exclude evidence: "(1) that Plaintiff was allegedly 'ridiculed' for reporting sexual harassment to HR; (2) that Plaintiff was allegedly re-assigned to a purportedly lesser desired role of checking in passengers into a flight in May 2019; (3) that Buenaflor and Lead CSA Brigette Lopez [("Lopez")] 'falsely reported' to upper management that Plaintiff subverted regulations; (4) that Lopez reassigned Plaintiff without warning multiple times; (5) that Plaintiff was reassigned to less desirable work roles; (6) that Buenaflor reported Plaintiff as impermissibly absent; (7) [regarding] other alleged interactions by Buenaflor with [Lopez]; and (8) . . . regarding the purported hostile environment that allegedly caused Plaintiff's resignation." *Id.* at 4 (citing to Pl.'s Opp'n to Def.'s MSJ at 7–8, ECF No. 38). Defendant argues that the targeted evidence has no "bearing on the prima facie elements of [Plaintiff's] surviving claims." *Id.* at 5.

First, Defendant explains that to establish a hostile work environment, Plaintiff must "prove the conduct she alleges was based on her sex/gender." *Id.* at 5 (emphasis omitted). But, per Defendant, Plaintiff admitted that the incidents described above occurred because she reported harassment, not because of her sex. *Id.* Defendant cites no authority to support that argument. Next, Defendant claims—again without citing a single case—that because the evidence at issue "has no bearing on Plaintiff's underlying claim of sex-based hostile work environment harassment, the evidence is likewise irrelevant to [her] failure to prevent claim." *Id.* at 5–6. Third, Alaska contends that, as much of the evidence "post-dates Buenaflor's purported sexual harassment of Plaintiff," none of it bears on whether "Alaska knew that Buenaflor had the alleged propensity to harass . . . *before* Plaintiff" was allegedly harassed. *Id.* at 6. And finally, Defendant argues that because all of Defendant's alleged conduct was "inherently intentional," it has no relevance to her NIED claim. *Id.*

In response, Plaintiff asserts that the targeted evidence is relevant to Plaintiff's hostile environment claim because (1) "[f]ederal and California courts have repeatedly affirmed that post-harassment conduct that is not sexual in nature provides evidence of sexual harassment," ECF No. 85 at 3; (2) some of the evidence—*e.g.*, Plaintiff's decision to resign based on the alleged harassment—speaks to her "subjective" perception that the

working environment was offensive, *id.* at 4; and (3) she reported much of the "facially non-sexual harassment," so evidence of such harassment speaks to Defendant's knowledge, *id.* at 4–5.  Plaintiff adds that the evidence of continued harassment "goes directly to [her] state of mind and mental and emotional distress damages."  *Id.* at 5. Finally, Plaintiff claims that Defendant's Motion is improperly broad.  *Id.* at 6.

Regarding the hostile environment claim, Defendant fails to acknowledge that courts have held facially *non-sex-based*, harassing conduct that occurs after sexual harassment can constitute evidence of continuing *sex-based* harassment.[5]  Of course, to be relevant to Plaintiff's claim, both forms of alleged harassment must be connected to some degree— *e.g.*, be close in time or involve similar underlying conduct.  *See Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1056 (9th Cir. 2007).  And the Court has previously noted that some of the events targeted by Defendant lack a strong link to earlier-in-time acts of alleged harassment.  *See* ECF No. 65 at 48–49.  But that discussion came in the context of evaluating one of Plaintiff's other claims and thus applying a different legal standard. Under FEHA, "the existence of a hostile work environment depends upon 'the totality of the circumstances.'"  *Hughes v. Pair*, 209 P.3d 963, 971 (Cal. 2009) (quoting *Miller v. Dep't of Corr.*, 115 P.3d 77, 87 (Cal. 2005)).  Defendant—dedicating all of three short paragraphs to this issue—fails to engage with this analysis, and the Court declines to litigate Alaska's case on its behalf.[6]  *See* ECF No. 74-1 at 5.

/ / /

---

[5] *See Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1109 (9th Cir. 1998) ("[W]hat might be an innocuous occurrence in some circumstances may, in the context of a pattern of discriminatory harassment, take on an altogether different character, causing a worker to feel demeaned . . . on account of her gender."); *Dominguez v. Wash. Mut. Bank*, 85 Cal. Rptr. 3d 705, 713 (Ct. App. 2008) (holding conduct like "blocking [plaintiff's] access to her work stations" and "lying to her about whether he had mail ready for her to process" was "just another way . . . to harass [plaintiff] about her sexual orientation without expressly saying so").

[6] As most of Defendant's remaining arguments rely on the premise that the challenged evidence is not relevant to Plaintiff's hostile environment claim, *see, e.g.*, ECF No. 74-1 at 5–6, those arguments fail as well.

As Defendant both fails to account for binding precedent and targets a wide swath of evidence without arguing with any specificity why it should not be admitted, the Court **DENIES** Defendant's Second Motion *in Limine*.

## III. Motion *in Limine* No. 3 to Exclude Evidence or References to the Reasons for Mark Buenaflor's Separation from Defendant

Defendant's next Motion seeks to prevent Plaintiff from introducing evidence pertaining to the reasons behind Buenaflor's departure—which occurred in March of 2023—from his job with Defendant. *See* ECF No. 75-1 at 3. Defendant argues that said evidence constitutes private information that is shielded from disclosure by the right to privacy guaranteed in the California Constitution. *See id.* Defendant also argues that the reasons for Buenaflor's departure (1) have no probative value, as the separation occurred over two years after the alleged harassment; and (2) could be used to make a "bad character" argument and "inflame, confuse, and mislead the jury." *Id.* at 4–5.

For her part, Plaintiff contends that any privacy interest Buenaflor may have is outweighed by the utility of the information sought. *See* ECF No. 84 at 1. Specifically, Plaintiff asserts that the evidence at issue could speak to whether Defendant took "*immediate* and *appropriate* corrective action" after Defendant learned of Buenaflor's conduct. *Id.* at 3 (citation omitted). For example, if Buenaflor was terminated for non-harassment-related reasons (*e.g.*, underperformance), that information would demonstrate "that Alaska promptly addresses issues of underperformance" but not of harassment. *Id.* at 4. Plaintiff also distinguishes the cases cited by Defendant to support its privacy argument as involving much broader disclosures, like "personnel, tenure, and promotion files," than the information at stake here. *Id.* at 2. Finally, Plaintiff takes the position that if this evidence is kept from them, the jury will be left to speculate whether Defendant took "corrective action" or if Buenaflor left for unrelated reasons. *See id.* at 3.

Neither party has informed the Court why Buenaflor left his position. So, while the Court agrees that his departure *might* have little probative value because it occurred over two years after he allegedly harassed Plaintiff, the Court is currently unable to evaluate the

relevance of—and unfair prejudice risked by—this evidence.  Accordingly, the Court **RESERVES** ruling on this Motion until the missing information is provided.[7]

### IV.    Motion *in Limine* No. 4 to Exclude "Me Too" Evidence

In this Motion, Defendant asks the Court to "exclude evidence or argument of *any* alleged inappropriate conduct by Mark Buenaflor or *any* Alaska employees towards *any* individual aside from Plaintiff."  ECF No. 76-1 at 2 (emphases added).

In support, Defendant first argues that such "me too" evidence is irrelevant to Plaintiff's claims.  Specifically, Defendant contends that harassment Plaintiff did not personally observe could not relate to how she perceived the hostility of her environment, *id.* at 6–7; that the occurrence of workplace harassment does not constitute "proof that the employer failed to take reasonable steps to prevent it," *id.* at 7; and that as many of these me-too incidents either went unreported to Defendant or occurred after Plaintiff was allegedly harassed, such evidence does not bear on whether Defendant knew about Buenaflor's behavior, *id.* at 8.  Next, Defendant claims that the presentation of me-too evidence risks confusing the jury, wasting time, and unduly prejudicing Defendant "by influencing the jury to be biased against Defendant for reasons having nothing to do with Plaintiff's claim[s]."  *Id.* at 9–10.  Lastly, Defendant invokes Rule 404 and predicts that Plaintiff will use me-too evidence to imply that "because other employees . . . allegedly encountered similar conduct, Plaintiff must have" too.  *Id.* at 12.

Plaintiff contends Defendant's fourth MIL represents an "abuse[]" of "the motion in limine process" due to its length, the breadth of the evidence it seeks to exclude, and its failure to identify with specificity the witnesses or testimony it targets.  *See* ECF No. 83 at 5.  Plaintiff also argues that evidence from me-too witnesses bears on numerous relevant questions, including, *inter alia*, whether Defendant knew or should have known of the harassment and whether the company took corrective actions, *see id.* at 6–9; whether the

---

[7] At the MIL hearing, counsel for the Defendant informed the Court that Buenaflor was terminated for "performance-based" and not harassment-related reasons.  As that statement is not sufficient for the Court to rule on this Motion, the Court will await further information from Defendant.

harassment complained of was based on sex, *see id.* at 11–13; and whether a "reasonable woman" would have considered the work environment to be hostile, *see id.* at 13–14. Finally, Plaintiff contends that me-too evidence is also admissible to attack or support a witness's credibility and to rebut Defendant's affirmative defenses, like lack of actual knowledge and avoidable consequences. *See id.* at 16–18.

As an initial matter, the Court notes that me-too evidence "is neither *per se* admissible nor *per se* inadmissible." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 381 (2008). Indeed, such evidence may be relevant to Plaintiff's claims in multiple ways. *See Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 445 (9th Cir. 2017) (holding harassing conduct aimed at others "helps to generate genuine issues of material fact that the environment was objectively hostile"); *Pantoja v. Anton*, 129 Cal. Rptr. 3d 384, 406–07 (Ct. App. 2011)[8] (explaining in a hostile environment case that me-too evidence can help establish "discriminatory intent"—*i.e.*, "that the harassing conduct took place because of the plaintiff's sex"); *Zucchella v. Olympusat, Inc.*, No. CV197335DSFPLAX, 2023 WL 2633947, at *12 (C.D. Cal. Jan. 10, 2023) (finding "me too" allegations helped "demonstrate that [the employer] was on notice that multiple women had complained about [an employee's] conduct" in a FEHA failure-to-prevent claim)

Nor is there a strict rule requiring a plaintiff to have personally witnessed third-party harassment; instead, the admissibility of me-too evidence "depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint*, 552 U.S. at 388; *Meeks v. Autozone, Inc.*, 235 Cal. Rptr. 3d 161, 175 (Ct. App. 2018) ("'Me too' evidence . . . may be admissible . . . even where the conduct

---

[8] Defendant's attempt to distinguish *Pantoja* on the ground that it involved "a claim for sexual discrimination," and thus requires a showing of intent that sexual harassment claims do not, is entirely unconvincing. *See* ECF No. 76-1 at 13–14. Indeed, that argument was explicitly addressed in *Pantoja* itself. *See* 129 Cal. Rptr. 3d at 406–07 ("[T]he *kind* of intent or motivation required for hostile environment harassment may be different from the kind required for discriminatory hiring or firing. . . . Either way, however, the defendant's discriminatory mental state is crucial. . . . There is no reason why me-too evidence would be admissible . . . to prove the defendant's discriminatory mental state in one type of case but not the other.").

occurred outside the plaintiff's presence and at times other than when the plaintiff was employed."). In other words, determining the admissibility of me-too evidence requires a "fact-intensive, case-by-case analysis." *Kelly v. Boeing Co.*, No. 17-1679 DSF (MRWX), 2018 WL 11471263, at *3 (C.D. Cal. July 6, 2018).

Therein lies Defendant's problem; Defendant's breathtakingly broad Motion fails to engage in the required fact-intensive inquiry. Defendant does not, for example, identify the timing or conditions of any alleged incidents, nor compare such details to Plaintiff's circumstances. The Court thus lacks the information required to determine which pieces of me-too evidence may be irrelevant, unfairly prejudicial, or unjustifiably time consuming. *See Brown v. Simpson Strong-Tie Co., Inc.*, No. 2:19-CV-01921-KJM-AC, 2022 WL 2135340, at *1–2 (E.D. Cal. May 16, 2022) (denying motion *in limine* to exclude third-party's termination and "other 'me too' evidence" because "the court ha[d] insufficient information" to rule on it).

Consequently, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's fourth Motion *in Limine* (ECF No. 76). It is well established that me-too evidence cannot be used to make a propensity argument, *see e.g.*, *Zucchella*, 2023 WL 2633947, at *16, but Defendant's Motion is otherwise overly broad. Of course, me-too evidence that is unnecessarily duplicative, unfairly prejudicial, or insufficiently related to this case can be challenged at trial and will not be admitted. In the interim, the Court encourages the Parties to work together towards narrowing the universe of evidence that may be introduced at trial to preemptively address some of these issues.

## V. Motion *in Limine* No. 5 to Preclude Use of "Golden Rule" and "Reptile Theory" Arguments

Defendant's fifth Motion asks the Court to Preclude Plaintiff's counsel from presenting "Golden Rule" or "Reptile Theory" questions, evidence, or argument to the jury by "making statements to appeal to jurors' concerns about their own experiences and the safety of the community." ECF No. 77-1 at 2. Defendant contends that golden rule arguments—*i.e.*, inviting jurors to imagine themselves in the plaintiff's shoes—are

improper, as they invite the jury to decide the case based on biases rather than the facts and the law.  *See id.* at 3–4.  Defendant further claims that reptile theory arguments, which shift the jury's attention "toward the possible injury or danger to the jurors themselves or to the public," constitute improper appeals to the jurors' self-interest.  *Id.* at 5.  Per Defendant, both kinds of argument should be excluded under FRE 403, as they are irrelevant to Plaintiff's claims and risk unfair prejudice to Defendant.  *Id.* at 6.

Plaintiff agrees that "Golden Rule" arguments "ask[ing] the jurors to put themselves in the shoes of the plaintiffs or defendants, and decide the case from that perspective," are generally prohibited.  ECF No. 82 at 1.  So, Plaintiff claims, she does not intend to make such arguments during trial.  *Id.*  Plaintiff otherwise opposes the Motion, including Defendant's characterization of "Reptile Theory" arguments, because it is both broad and vague.  *See id.* at 2–3.  Additionally, Plaintiff argues that the Motion is "an effort to preclude Plaintiff from arguing either that Alaska violated laws and standards or that jurors should consider workplace safety or deterrence of similar behavior."  *Id.* at 2.  That attempt is problematic, Plaintiff continues, because hostile-environment cases cannot be tried without reference to the "concept of workplace safety."  *Id.*

The Court will **GRANT IN PART AND DENY IN PART** Defendant's fifth Motion *in limine* (ECF No. 77).  The Parties appear to narrowly agree that "golden rule" arguments about the calculation of damages are improper, so those arguments will be excluded.  However, Defendant's Motion seems to target a much broader range of arguments; indeed, it is unclear from the Parties' briefing exactly what arguments might fall into either category.  And as "[t]he universe of objectionable phrasings is expansive," the Court "will not now endeavor to decide matters that require the benefit of verbatim analysis and context to be properly considered."  *Rosas v. GEICO Cas. Co.*, No. 218CV01200APGNJK, 2022 WL 2439575, at *1 (D. Nev. Jan. 26, 2022).  Defendant's remaining concerns are more suitably addressed with trial objections.

/ / /

/ / /

## VI.   Defendant's Motion *in Limine* No. 6 to Exclude Evidence and References to EEOC Interview Notes

Alaska seeks to exclude "evidence and argument at trial" regarding—and preclude "any reference to"—the Equal Employment Opportunity Commission's ("EEOC") interviews or interview notes (collectively, the "EEOC Records").  ECF No. 78-1 at 2.  Defendant argues that the EEOC Records (1) are "rife with irrelevant accusations that have no bearing on Plaintiff's claims," *id.* at 3; (2) consist of "layered hearsay and wholly speculative" content, *id.* at 5; (3) will be used by Plaintiff as character evidence, *see id.* at 6; and (4) will confuse the jury and waste judicial resources, *see id.* at 7.

Plaintiff argues that this request targets an impermissibly broad swath of potential evidence.  ECF No. 81 at 2.  Relatedly, Plaintiff accuses Defendant of cherry-picking statements from the EEOC Records while attempting to broadly label all such material as inadmissible.  *See id.* at 2–3.  Further, Plaintiff contends that the EEOC Records are relevant for multiple reasons, such as to show that Defendant knew harassment was occurring or to corroborate Plaintiff's claim that said harassment was severe or pervasive.  *Id.* at 4.  Lastly, Plaintiff pushes back on Defendant's hearsay contention, arguing that individual statements in the Records either (1) are not offered for the truth of the matters asserted; (2) fall under hearsay exceptions; and/or (3) are admissible for rehabilitating or attacking the credibility of witnesses.  *See generally id.* at 5–9.

The Court will **DENY** Defendant's sixth Motion *in Limine* (ECF No. 78).  At this time, it appears at least some statements made in the EEOC Records could potentially be admissible for various purposes.  And though the Court is mindful of Defendant's concern about minitrials, Defendant swings too broadly by attempting to exclude "*any* reference to" an entire category of evidence.  *See Faulstick v. S. Tire Mart, LLC*, No. 2:13CV65-KS-MTP, 2014 WL 4055571, at *5 (S.D. Miss. Aug. 14, 2014) (denying "broad-based request for the peremptory exclusion of any EEOC-related materials" and deciding that the "admission . . . of EEOC evidence w[ould] be on a case-by-case basis at trial").  Indeed, Defendant cites no cases in which courts have wholesale excluded all EEOC materials,

whether on hearsay grounds or otherwise.  At oral argument, the Parties agreed to work towards narrowing the specific content within the EEOC Records, and corresponding witness testimony, that the Parties intend to use at trial.  After that occurs, Defendant may bring a renewed, more specific challenge to records that remain in dispute.

## VII. Motion *in Limine* No. 7 to Exclude Evidence or References to Plaintiff's Decision to Quit and Lost Wages

Alaska's final Motion seeks to preclude Plaintiff from introducing evidence related to her decision to quit her job and evidence of her lost wages.  ECF No. 79-1 at 2. Defendant argues, without citing a single case, that such evidence is "wholly irrelevant" to Plaintiff's surviving claims for sexual harassment, failure to prevent, negligent retention, and NIED.  *See id.* at 3.  At oral argument, Defendant clarified its view that this evidence is irrelevant because Plaintiff cannot recover economic damages under any of her claims absent evidence of an adverse employment action.  Defendant also contends in its Motion that the evidence at issue would give Plaintiff another bite at the apple regarding her dismissed claims for sexual discrimination and constructive discharge, create emotional bias against Defendant, and waste time and judicial resources.  *Id.* at 4.

Countering, Plaintiff first argues that two of Plaintiff's surviving claims arise under FEHA, which—unlike Title VII—does not require a constructive discharge before economic damages become recoverable.  ECF No. 80 at 4.  Plaintiff also states that her decision to resign is relevant to show "the extent to which Plaintiff subjectively believed the environment to be harassing."  *Id.* at 7 (emphasis omitted).  As evidence of Plaintiff's resignation and lost wages bears on at least some of her claims, Plaintiff continues, Defendant's Motion must be denied.  *See id.* at 4–5.

Plaintiff next argues that Defendant failed to move for summary judgment on Plaintiff's prayer for lost wages and should not be allowed to do so through a motion *in limine*.  *See id.* at 5–6.  Further, Plaintiff claims she will be prejudiced if this evidence is excluded.  Jurors will be informed of the timing of the harassment and Plaintiff's resignation, and they "may conclude that [Plaintiff] resigned for reasons unrelated to sexual

harassment" unless Plaintiff can tell them otherwise. *Id.*

Defendant's main argument—that a plaintiff cannot recover economic damages absent evidence of an adverse employment action—runs counter to FEHA policy and precedent. True, under Title VII, "[a]n employee who resigns . . . cannot secure backpay unless his employer constructively discharged him." *Sanchez v. City of Santa Ana*, 915 F.2d 424, 431 (9th Cir. 1990). But "FEHA offers greater protection and relief to employees than does Title VII." *Murillo v. Rite Stuff Foods, Inc.*, 77 Cal. Rptr. 2d 12, 17 (Ct. App. 1998). Indeed, under FEHA, "all relief generally available in noncontractual actions . . . may be obtained." *Commodore Home Sys., Inc. v. Sup. Ct.*, 649 P.2d 912, 918 (Cal. 1982). FEHA thus allows plaintiffs to recover "all damages necessary to make [them] whole." *Cloud v. Casey*, 90 Cal. Rptr. 2d 757, 765–66 (Ct. App. 1999).

With the above principles in mind, courts have held that post-resignation, economic damages are sometimes necessary to make victims of FEHA violations whole, even where such victims suffered no constructive discharge or similar adverse employment action. *See McCoy v. Pac. Mar. Assn.*, 156 Cal. Rptr. 3d 851, 873 (Ct. App. 2013) ("[E]conomic damages are awardable to appellant despite the absence of a constructive discharge."); *Terry v. City of San Diego*, No. 06-CV-1459-MMA CAB, 2012 WL 216591, at *2 (S.D. Cal. Jan. 24, 2012) ("California law permits an award of post-resignation damages for violations of FEHA irrespective of whether a plaintiff claims constructive discharge."). In other words, the experience of sexual harassment can justify economic damages. *Terry v. Preovolos*, No. D060904, 2013 WL 51932, at *2, *7 (Cal. Ct. App. Jan. 4, 2013) (holding "a victim of sexual harassment or other discrimination under FEHA who resigns from his or her job may seek and be awarded lost wages" even though the jury found plaintiff had "not suffer[ed] any adverse employment action").

That is not to say all victims of a hostile work environment can successfully recover post-resignation, economic damages; they must still establish causation. For Plaintiff "to recover damages for lost wages, she must prove that her decision to resign was proximately caused by . . . unlawful sexual harassment under FEHA." *Lindsey v. Costco Wholesale*

*Corp.*, No. 15-CV-03006-WHO, 2016 WL 5815286, at *3 (N.D. Cal. Oct. 5, 2016).  Put differently, to recover these damages Plaintiff will need to prove that "the underlying FEHA violation"—*e.g.*, the hostile work environment—was "a factor that a reasonable person would consider to have contributed to her lost wages." *Id.* at *4 (citing CACI 430, Causation: Substantial Factor).  Defendant's Motion, however, does not address this issue.  And in either event, "[p]roximate cause is a question of fact for the trier of fact and generally cannot be decided as a matter of law." *Preovolos*, 2013 WL 51932, at *8.

Defendant's central contention is unsupported by caselaw, and its barebones alternative argument regarding the risk of unfair prejudice is equally unconvincing.  Accordingly, the Court will **DENY** Defendant's seventh Motion *in Limine* (ECF No. 79).

## CONCLUSION

In light of the foregoing, the Court:

1) **GRANTS IN PART AND DENIES IN PART** Plaintiff's first Motion *in Limine* (ECF No. 72);

2) **GRANTS IN PART AND DENIES IN PART** Plaintiff's second Motion *in Limine* (ECF No. 72);

3) **DENIES** Plaintiff's third Motion *in Limine* (ECF No. 72);

4) **GRANTS** Plaintiff's fourth Motion *in Limine* (ECF No. 72);

5) **GRANTS IN PART AND DENIES IN PART** Plaintiff's fifth Motion *in Limine* (ECF No. 72);

6) **DENIES** Defendant's first Motion *in Limine* (ECF No. 73);

7) **DENIES** Defendant's second Motion *in Limine* (ECF No. 74);

8) **RESERVES** its ruling on Defendant's third Motion *in Limine* (ECF No. 75);

9) **GRANTS IN PART AND DENIES IN PART** Defendant's fourth Motion *in Limine* (ECF No. 76);

10) **GRANTS IN PART AND DENIES IN PART** Defendant's fifth Motion *in Limine* (ECF No. 77);

11) **DENIES** Defendant's sixth Motion *in Limine* (ECF No. 78); and

12)   **DENIES** Defendant's seventh Motion *in Limine* (ECF No. 79).

The Court reiterates that these rulings are without prejudice, and that the Parties may make valid contemporaneous objections at trial concerning the matters discussed in this Order. The Court also reserves the right to change any of these rulings based on the testimony developed at trial.  Further, as discussed at the MIL hearing, the Court will entertain a renewed, better tailored pre-trial challenge regarding the issues raised in Defendant's first, fourth, and sixth Motions after the Parties work to narrow the scope of evidence expected to be presented at trial.

**IT IS SO ORDERED.**

Dated:  January 23, 2024

Hon. Janis L. Sammartino
United States District Judge

22-CV-203 JLS (BGS)