UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRIZ TIJERINA, individually,<br><br>Plaintiff,<br><br>v.<br><br>ALASKA AIRLINES, INC.,<br>an Alaska Corporation; and DOES 1–50,<br><br>Defendant. | Case No.: 22-CV-203 JLS (DTF)<br><br>**ORDER ON DEFENDANT'S THIRD MOTION *IN LIMINE* AND RENEWED MOTIONS *IN LIMINE***<br><br>(ECF Nos. 75, 101, 102, 103) |

Presently before the Court are Defendant Alaska Airlines, Inc.'s ("Defendant" or "Alaska") third Motion *in Limine* ("Mot.," ECF No. 75)—on which the Court previously reserved its ruling—and three Renewed Motions *in Limine* ("Renewed Mots.," ECF Nos. 101, 102, 103). On May 1, 2024, the Court held a hearing on these Motions and issued tentative rulings. Having considered the Parties' moving papers, the arguments made during oral argument, and the applicable law, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motions. The Court reminds the Parties that, given the nature of motions *in limine*, the Court's rulings are necessarily tentative and may be revisited during trial. *See United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) ("The district court may change its ruling at trial because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling.").

## BACKGROUND

As the Parties are familiar with this action's factual and procedural background, the Court recites here only those facts relevant to the instant Motions.

On October 23, 2024, the Parties filed their initial Motions *in Limine*. *See* ECF Nos. 72, 73, 74, 75, 76, 77, 78, 79. Oral argument regarding these Motions took place on January 10, 2024. *See* ECF No. 93.

In its January 24, 2024 Order (the "Order," ECF No. 94), the Court reserved ruling on one of Defendant's original Motions pending the receipt of additional information. *See* Order at 13–14. The Court otherwise largely denied the initial Motions on the ground that many targeted impermissibly broad swaths of evidence. *See generally id.* However, the Court gave Defendant leave to file renewed, better-tailored challenges regarding issues raised in three of the Motions. *See id.* at 22. These specific Motions dealt with previously undisclosed witnesses, so-called "me too" evidence, and records from the Equal Employment Opportunity Commission's ("EEOC") investigation into Plaintiff's harassment allegations. *See* ECF Nos. 73, 76, 78.

The Renewed Motions followed, and the Court held another motion hearing on May 1, 2024. *See* ECF No. 111.

## DEFENDANT'S MOTIONS *IN LIMINE*

### I. Motion *in Limine* No. 3 to Exclude Evidence or References to the Reasons for Mark Buenaflor's Separation from Defendant

One of Defendant's initial Motions *in Limine* focused on Mark Buenaflor, who allegedly harassed Plaintiff while employed by Defendant as a lead customer service associate ("Lead CSA"). *See* Order at 13–14. Buenaflor was terminated by Alaska in March of 2023. *See* ECF No. 75-1 at 1.[1]

/ / /

---

[1] Pin citations to the Parties' briefs, but not their exhibits, refer to the CM/ECF page numbers stamped electronically across the top of each document.

Defendant sought to prevent Plaintiff from introducing the reasons behind Buenaflor's departure, arguing the information (1) was protected by the privacy rights guaranteed in California's Constitution; (2) lacked probative value because years separated Buenaflor's firing from the alleged harassment; and (3) could be used to make "bad character" arguments. *See generally* ECF No. 75-1. Plaintiff countered that Buenaflor's privacy interests were minor and outweighed by the utility of the information sought. For instance, per Plaintiff, the reasons behind Buenaflor's departure speak to whether Defendant took "*immediate* and *appropriate* corrective action" after Defendant learned of Buenaflor's conduct. *See generally* ECF No. 84.

The Court could not rule on Defendant's initial Motion because the Parties neglected to inform the Court why Buenaflor had in fact left Alaska. *See* Order at 13–14 ("[W]hile the Court agrees that his departure might have little probative value because it occurred over two years after he allegedly harassed Plaintiff, the Court is currently unable to evaluate the relevance of—and unfair prejudice risked by—this evidence."). Defense counsel agreed to provide the Court with additional details after conferring with their client.

The Renewed Motions further discuss Buenaflor's termination, but only briefly. Defendant claims Buenaflor was let go for violating Rules 3, 15, 22, and 31 of Alaska's "Our People Policy" ("Alaska's Policy"). ECF No. 101 at 13. Per Defendant, these rules prohibit, "(1) employees [from] leav[ing] company premises without supervisor authority, (2) misrepresentation of facts regarding time cards, (3) discourteous behavior toward guests, and (4) misrepresentation to obtain benefits or wages." *Id.* at 13 n.4.

Defendant's explanation is not only vague but also potentially misleading. For example, Defendant characterizes Rule 22 as prohibiting "discourteous behavior toward guests," *id.*, while the rule actually targets "*[t]hreatening*, *intimidating*, or discourteous behavior to guests *or employees*," ECF No. 104-2 Ex. G at Alaska328 (emphasis added).[2]

---

[2] Plaintiff filed a copy of Alaska's Policy for the Court's review after Defendant opted not to do so. *See* ECF No. 104-2 Ex. G.

When asked at oral argument about this apparent misrepresentation, Defense counsel assured the Court that Buenaflor had been terminated—at least so far as any Rule 22 violation was concerned—only for his behavior toward one or more guests. Defendant did not, however, otherwise elaborate on Buenaflor's conduct.

Questions of Defendant's forthrightness aside, Defendant's Renewed Motion remains too fuzzy on the specifics of Buenaflor's firing. In the instant Motions, the Parties largely raise the same Rule-403 and privacy arguments as they did in their prior briefs. *See, e.g.*, ECF No. 101 at 13; ECF No. 104-1 at 4–5. But without actual details, the Court remains unable to weigh the relevance and potential prejudice associated with this evidence. Defendant had the opportunity to clarify matters, but it failed to do so in any meaningful way.

Defendant's privacy argument fails for similar reasons. Under California law, "[c]ourts must . . . place the burden on the party asserting a privacy interest to establish its extent and the seriousness of the prospective invasion, and against that showing must weigh the countervailing interests the opposing party identifies." *Williams v. Super. Ct.*, 398 P.3d 69, 87 (Cal. 2017). Here, Alaska gestures at a broad privacy right regarding employment information without explaining the potential harm associated with disclosing the specific evidence at issue. Plaintiff, on the other hand, identifies several reasons why Buenaflor's termination bears on this action. Moreover, the cases Defendant cites involve much broader and more invasive inquiries than the one under discussion here. *See, e.g.*, *Britt v. Super. Ct.* 574 P.2d 766, 780 (Cal. 1978) (vacating discovery order that had allowed defendant to request "plaintiffs' private associational affiliations and activities" and their "lifetime medical histories").

The Court will not exclude the circumstances surrounding Buenaflor's termination based on Defendant's ill-defined representations and abstract arguments. Accordingly, Defendant's Motion is **DENIED** without prejudice to objections at trial.

/ / /

/ / /

## II. Renewed Motion *in Limine* No. 1 to Exclude Witnesses Not Previously Disclosed and to Limit the Scope of Testimony

In its first Renewed Motion, Defendant seeks to (1) preclude Plaintiff from calling witnesses listed in her Pre-Trial Disclosures but not her Initial Disclosures; and (2) limit the testimony of Plaintiff's non-retained experts—three of her treating healthcare providers—who were (allegedly) inadequately disclosed. *See generally* ECF No. 101.

### A. *Undisclosed Witnesses*

Defendant first targets the following would-be witnesses: Maria Venegas, Jennifer Santos Inacio, Denise Ortega (Mendoza), Terry Benavidez, Veronica Mariah Evers, Joe Wonderly, Gerardo Michael Tijerina, and Rebekah Gettinger.[3] *See* ECF No. 101 at 8–9. Defendant contends these witnesses should be excluded because Plaintiff failed to timely identify them and explain their relevance to this case.

### 1. *Legal Framework*

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i), "a party must . . . provide to the other parties . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses . . . ." A party generally has a duty to "supplement or correct" their initial disclosures if they "learn[] that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). These rules exist "to encourage parties to try cases on the merits, not by surprise, and not by ambush." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014).

---

[3] Defendant's Motion also labels Richard Hines and Shawna Melva as previously undisclosed witnesses. However, in Alaska's confusing but lengthy chart—which, per Defendant, "addresses *all* objections to the witnesses' testimony," ECF No. 101 at 13 n.3 (emphasis added)—Defendant does not raise any nondisclosure objections regarding Hines or Melva. *See id.* at 23–24, 30. Conversely, the chart does contain such objections for the other witnesses listed above. The Court thus does not interpret the Renewed Motion to challenge either Hines or Melva on Rule 26 grounds. The fact that Hines *was* listed in Plaintiff's initial disclosures reinforces the Court's reading.

A party need not supplement its initial disclosures if "the additional or corrective information has . . . *otherwise been made known* to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). A witness can be "otherwise disclosed" if, for example, she is "identified during the taking of a deposition." Fed. R. Civ. P. 26 advisory committee notes to 1993 amendment. That said, the "mere mention of a name in a deposition" will not suffice. *Ollier*, 768 F.3d at 863. Instead, a purported disclosure must make known "the witness *and* his connection to the claims or defenses of the proffering party." *Rigsbee v. City & Cnty. of Honolulu*, No. CV 17-00532 HG-RT, 2019 WL 984275, at *3 (D. Haw. Feb. 28, 2019) (emphasis added).

"If a party fails to provide information or identify a witness as required in Rule 26(a) or (e), the party is not allowed to use that information or witness . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Despite the apparently self-executing language of Rule 37(c), courts retain discretion to impose specified alternative sanctions '[i]n addition to or instead of' the exclusion of evidence." *Patton v. 1st Light Prop. Mgmt., Inc.*, No. 14-CV-1489-AJB-WVG, 2016 WL 9503737, at *2 (S.D. Cal. Nov. 8, 2016) (alteration in original) (quoting Fed. R. Civ. P. 37(c)). "When it comes to excluding witnesses under Rule 37(c)(1)," a district court's "discretion is 'particularly wide.'" *Ollier*, 768 F.3d at 862 (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)).

"Among the factors that may properly guide a district court's discretion in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010). "The party facing sanctions bears the burden of proving that its failure to disclose . . . was substantially justified or is harmless." *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012).

///

### 2. *The Parties' Arguments*

The Renewed Motion includes a perplexing chart combining *all* of Defendant's objections (the majority of which had no connection to this Motion) to numerous witnesses (some of which are not the subject of this Motion).[4] *See* ECF No. 101 at 7–25. So far as the Court can tell, the only relevant argument Defendant makes in the chart is the generalized contention that each of the undisclosed witnesses were mentioned too briefly during discovery and only through unreliable hearsay testimony. *See, e.g.*, *id.* at 23.

For her part, Plaintiff provides a more detailed chart that attempts to respond to each of Defendant's objections, whether related to the substance of the Renewed Motion or not. *See* ECF No. 104-1 at 3–41. Plaintiff also notes when each of the initially-undisclosed witnesses came up during discovery, *see* ECF No. 104-2 at 2–10, and she argues that Defendant has failed to prove that any specific witness was not "otherwise disclosed," *see generally* ECF No. 104.

### 3. *Discussion*

As an initial matter, both Parties misunderstand the applicable legal standard. Plaintiff misreads the Court's prior Order as putting the burden on Defendant to prove each witness was not adequately disclosed. Meanwhile, Defendant incorrectly inserts considerations of hearsay and reliability into the equation. Instead, as explained above, the question is whether, over the course of discovery, each "witness and his connection to [Plaintiff's] claims or defenses" was adequately disclosed. *Rigsbee*, 2019 WL 984275, at *3. With this question in mind, the Court **GRANTS IN PART AND DENIES IN PART** the Renewed Motion as to the previously undisclosed witnesses.

---

[4] Per Defendant, the chart was meant "to allow the Court to analyze all witnesses holistically." ECF No. 101 at 13 n.3. But a single motion *in limine* is no means for initiating a global review of a party's grievances. Rather, motions *in limine* should generally "be narrowly tailored to address issues which will likely arise at trial and which require a pre-trial ruling due to their complexity and/or the possibility of prejudice if raised in a contemporaneous objection." *Russell v. City of Tupelo*, No. 1:20-CV-3-SA-DAS, 2021 WL 4983043, at *1 (N.D. Miss. Oct. 26, 2021) (quoting *King v. Cole's Poultry, LLC*, No. 1:14-CV-00088-MPM-DAS, 2017 WL 532284, at *1 (N.D. Miss. Feb. 9, 2017)). To the extent it was meant to clarify Defendant's arguments, Defendant's organizational choice was counterproductive.

First, the Court **DENIES** the Renewed Motion as to Maria Venegas, Jennifer Santos Inacio, Denise Ortega (Mendoza), Terry Benavidez, and Veronica Mariah Evers. The EEOC interviewed these witnesses (all of whom were Plaintiff's colleagues) while investigating Plaintiff's harassment allegations. Defendant received notes from these interviews, which showed that each witness had discussed topics relevant to this case, including, *inter alia*, past sexual harassment, complaints of harassment and Alaska's response thereto, and the authority of Lead CSAs. The contents of the interview notes were further called to Defendant's attention during the depositions of Plaintiff, Buenaflor, and Steven Zwerin (Alaska's Rule 30(b)(6) corporate designee).

However, the Court **GRANTS** the Renewed Motion as to Joe Wonderly, Gerardo Michael Tijerina, and Rebekah Gettinger. The brief mentions of these witnesses during discovery did not make clear whether and how Plaintiff would use them to make her case. At oral argument, Plaintiff's counsel sought to explain the nondisclosure by arguing that, as Wonderly and Gettinger were involved with the EEOC's investigation, their connection to this action was obvious. But numerous individuals are tied to the EEOC's investigation by documents in the record, and Defendant "should not have to guess which" potentially-relevant-but-not-yet-disclosed "witnesses may be called to testify." *Ollier*, 768 F.3d at 863. Similarly, while Gerardo Tijerina's connection to Plaintiff is clear (they are married), nothing in the record suggests Defendant had notice that he would be called to testify, let alone on what topic he might speak. *See Russell v. GC Servs. Ltd. P'ship*, 476 F. Supp. 3d 1097, 1101 (E.D. Wash. 2020) (excluding plaintiff's wife "because [p]laintiff did not identify his wife as an individual with knowledge about his alleged emotional distress damages during his deposition"). As Plaintiff provides no other justification nor explains why any resulting prejudice might be curable, Plaintiff has not met her burden to excuse the nondisclosure of these three witnesses.

### B.  *Non-retained Expert Witnesses*

Defendant also seeks to partially exclude three of plaintiff's former healthcare providers: Dede Echitey, a family nurse practitioner; Mark Melden, an osteopathic doctor;

and Dianna Hansen, a family and marriage therapist. ECF No. 101 at 9. Defendant relies on Federal Rule of Civil Procedure 26(a)(2)(C), which allows a party to disclose non-retained experts without providing a full expert report if the party divulges "(i) the subject matter on which the witness is expected to present evidence" and "(ii) a summary of the facts and opinions to which each of the witnesses is expected to testify." Defendant argues Plaintiff did not comply with either prong of Rule 26(a)(2)(C). *See id.* at 9–11.

Countering, Plaintiff correctly notes that Defendant failed to raise this issue in the initial motions *in limine*. *See* ECF No. 104 at 12. That aside, Plaintiff contends she complied with Rule 26(a)(2)(C) by providing (1) a detailed summary of the subject matter of each witness's testimony, and (2) the medical and treatment records from which the witnesses' opinions arose. *See id.* at 12–14.

Though Defendant's position is not without some merit, the Court **DENIES** the Renewed Motion as to Echitey, Melden, and Hansen. Upon reviewing the Parties submissions, the Court concludes Plaintiff provided an adequate summary of the subject matter on which these witnesses are expected to testify. Plaintiff did not, however, comply with Rule 26(a)(2)(C)(ii)'s summary-of-the-facts-and-opinions requirement; generally, the inclusion of medical records and treatment notes does not suffice.[5] Nevertheless, the incomplete disclosure was harmless and does not merit exclusion. Defendant received much, if not all, of the information necessary to ascertain the likely content of the witnesses' testimony.[6] And Plaintiff can cure any deficiencies by providing complete

---

[5] *See DeGuzman v. United States*, No. 2:12-CV-0338 KJM AC, 2013 WL 3149323, at *4 (E.D. Cal. June 19, 2013) ("[D]isclosure of medical records, standing alone, is not sufficient to satisfy the requirements of Rule 26(a)(2)(C). . . . "[M]edical records . . . do not necessarily provide an accurate or complete summary of expected testimony . . . ."); *Kristensen ex rel. Kristensen v. Spotnitz*, No. 3:09-CV-00084, 2011 WL 5320686, at *2 (W.D. Va. June 3, 2011) (explaining that as "summary" is "ordinarily understood to be an 'abstract, abridgment, or compendium,'" a plaintiff "cannot comply with [Rule 26(a)(2)(C)] by disclosing the complete records of the treating physicians at issue" (citation omitted)).

[6] For similar reasons, another of Defendant's arguments fails to persuade. Defendant contends Plaintiff has improperly attempted to expand the scope of the experts' testimony to include economic damages. In response, Plaintiff indicates that the non-retained experts' testimony on economic damages will be limited to (1) the extent to which Plaintiff's emotional distress "was caused by her loss of income" after quitting

summaries to Defendant now, particularly as this case is not set for trial until December.

## III. Renewed Motion *in Limine* No. 4 to Exclude "Me Too" Witnesses

In the second Renewed Motion, Defendant seeks to "exclude evidence or argument of any alleged inappropriate conduct by Mark Buenaflor or any Alaska employees towards any individual aside from Plaintiff." ECF No. 102 at 6. Based on the chart attached to this Motion, Defendant anticipates such me-too evidence will be introduced through the testimony of Buenaflor, Venegas, Inacio, Donna McCoy, Ortega, Benavidez, Evers, CSA Jeff Umali, and Lead CSA Alvin Atienza. *See id.* at 12–22. The Court granted Defendant's original Motion on this topic to the extent it sought to preclude propensity arguments, but otherwise denied the Motion as improperly broad. *See* Order at 16.

The Court first addresses Defendant's challenge regarding Umali and Atienza. Defendant not only targets me-too evidence—*e.g.*, testimony regarding Umali's interactions with employees other than Plaintiff—but also seeks to exclude *Plaintiff's* allegations against both witnesses. *See* ECF No. 102 at 21. Defendant argues said allegations (1) are too distinct from those levied against Buenaflor to "be collectively used to establish a hostile work environment";[7] and (2) are not relevant because the alleged conduct is not motivated by Plaintiff's sex. *Id.* at 10–11. The Court will not consider those arguments here, as they fall outside the scope of Defendant's *me-too* Motion; Umali's and Atienza's conduct was aimed at Plaintiff, *not* third parties. In any event, Defendant's

---

Alaska; and (2) "any monetary payments from Plaintiff for treatment." ECF No. 104 at 14–15. As such testimony, by Plaintiff's own admission, must be "limited to that which is disclosed in [the witnesses'] records," *id.* at 14, the Court does not find exclusion under Rule 26(a)(2)(C) necessary or appropriate.

[7] Defendant makes the related suggestion that Plaintiff cannot introduce events involving Atienza and Umali without "showing that [they] were working in concert" with Buenaflor "to harass Plaintiff." ECF No. 102 at 10. To the extent Defendant suggests harassers must, as a matter of law, subjectively decide to combine efforts to make someone's work environment hostile, their argument is without merit and unsupported by the sole case Defendant cites. *See Haberman v. Cengage Learning, Inc.*, 103 Cal. Rptr. 3d 19, 31 (Ct. App. 2009) (affirming summary judgment for defendants where employee sued two colleagues and their shared employer, the alleged conduct of each colleague "f[e]ll far short" of "show[ing] a hostile working environment," and the claim against the employer "was entirely based on the allegations asserted against [the colleagues]").

arguments speak more to the merits of Plaintiff's claims than the admissibility of the evidence. *See Azco Biotech, Inc. v. Qiagen, N.V.*, No. 12CV2599 BEN (DHB), 2015 WL 12516204, at *1 (S.D. Cal. Nov. 12, 2015) ("[W]here a motion *in limine* calls for a decision on the merits, courts should decline to consider it."). Defendant's Motion is therefore **DENIED** as to Plaintiff's allegations against Umali and Atienza.

The remainder of Defendant's Renewed me-too Motion is premised on an incorrect understanding of California law. Relying heavily on *Lyle v. Warner Bros. Television Prods.*, 132 P.3d 211 (Cal. 2006),[8] Defendant argues me-too evidence is irrelevant because the harassment of others cannot affect a plaintiff's perception of her environment if she did not witness it. *See* ECF No. 102 at 8. But as the Court has already explained, depending on how me-too evidence is used, no strict rule requires a plaintiff to have personally witnessed third-party harassment. *See* Order at 15. For example, per *Beyda v. City of Los Angeles*, me-too evidence can be used to establish the hostile nature of a work environment where a plaintiff did not *witness* the harassment but *had knowledge* of it. 76 Cal. Rptr. 2d 547, 551 (Ct. App. 1998). Notably, *Lyle* explicitly left that holding from *Beyda* untouched. 132 P.3d at 224 n.7. Moreover, me-too evidence may sometimes be used to show a discriminatory intent (*i.e.*, that the harassing conduct took place because of a plaintiff's sex), *regardless* of whether the plaintiff witnessed or was aware of said harassment. *See Pantoja v. Anton*, 129 Cal. Rptr. 3d 384, 406–07 (Ct. App. 2011).

Additionally, despite Defendant's efforts to identify specific witnesses who might provide me-too evidence, the Renewed Motion remains unworkably broad. As the Court previously explained to Defendant, "the admissibility of me-too evidence requires a 'fact-intensive, case-by-case analysis.'" Order at 16 (quoting *Kelly v. Boeing Co.*, No. 17-1679 DSF (MRWX), 2018 WL 11471263, at *3 (C.D. Cal. July 6, 2018)). But Defendant neither acknowledges the potential uses for me-too evidence—of which Plaintiff lists

---

[8] Though Defendant does not cite *Lyle* in the opening pages of its Renewed Motion, the case is cited extensively throughout the chart Defendant attached to the Motion. *See* ECF No. 102 at 13–17, 21.

many, *see generally* ECF No. 105—nor explains why any given me-too incident cannot be used for those purposes. While some me-too incidents may in fact be inadmissible, Defendant's vague Renewed Motion does not enable the Court to sift through the evidence to identify such incidents.

Consequently, setting aside the already-decided character evidence issue, Defendant's Renewed Motion to exclude all me-too evidence is **DENIED**. Challenges to me-too evidence will have to be made at trial with the benefit of context.

**IV.    Defendant's Renewed Motion *in Limine* No. 6 to Exclude Reference to EEOC Interview Notes**

In its final Renewed Motion in Limine, Defendant primarily seeks to exclude any evidence regarding—or reference to—EEOC interviews or interview notes (the "EEOC Notes" or "Notes"). *See* ECF No. 103 at 5. Additionally, Defendant appears to ask the Court to preclude references to all other EEOC records, as well as any discussion of the EEOC investigation. *See id.*

Defendant's Renewed Motion is premised on hearsay and Rule 403 objections. First, Defendant explains that even if the Notes "could be properly authenticated, the statements contained within [would remain] inadmissible as they constitute unreliable hearsay without an exception." *Id.* at 6. Further, Defendant argues that introducing the EEOC Notes will lead to unnecessary minitrials and be unduly cumulative, as Plaintiff "plans to present the same witnesses and the same testimony" described in the Notes. *Id.* at 7. Finally, Defendant claims any discussion of the EEOC's investigation will likely confuse the jury, who will misunderstand the EEOC's role and give the EEOC's work product undue deference. *See id.*

In response, Plaintiff contends (1) the Notes fall under the business records exception and the public records exception to the hearsay rule, ECF No. 106 at 11–12; (2) many statements contained within the EEOC Notes are offered not for the truth of the matter asserted, but to show, for example, Alaska's knowledge, *see id.* at 12–13; and (3) other statements can be used to rehabilitate or impeach witnesses, constitute a recorded

recollection, or fall under the party-opponent exception, *see id.* at 13–15.

Regarding the EEOC interview notes, the Court will **GRANT IN PART AND DENY IN PART** the Renewed Motion. Setting hearsay issues aside, it is unclear what value the Notes have given the availability of the interviewees to testify at trial. The introduction of these Notes would thus be needlessly cumulative and likely to cause delay and confusion. *See Sherman v. Chrysler Corp.*, 47 F. App'x 716, 722–27 (6th Cir. 2002) (upholding exclusion of EEOC records where the district court concluded the information contained therein "would be introduced through testimony at trial"). However, subject to the Federal Rules of Evidence, said Notes may be used for impeachment, rehabilitation, and refreshing a witness's recollection.

This leaves other EEOC records and the existence of the agency's investigation. Some courts have precluded discussion of an EEOC investigation where such evidence does not bear on the plaintiff's surviving claims (*e.g.*, after a claim for retaliation has been dismissed). *See, e.g.*, *Targonski v. City of Oak Ridge*, 921 F. Supp. 2d 820, 824–25 (E.D. Tenn. 2013). However, the Court is not prepared to find all evidence regarding the EEOC's investigation inadmissible, particularly as the Parties have given the question relatively little attention. The Court also deems reasonable Defendant's suggestion, made at oral argument, that prejudice associated with introducing the investigation could likely be cured with a limiting instruction. So, to the extent Defendant seeks to exclude all EEOC-related material, the Renewed Motion is **DENIED**. Defendant may, of course, object to the introduction of various aspects of the EEOC's investigation at trial, and the Court invites the Parties to submit a proposed limiting instruction regarding this issue.

## CONCLUSION

In light of the foregoing, the Court:

1) **DENIES** Defendant's Motion *in Limine* No. 3 (ECF No. 75);

2) **GRANTS IN PART AND DENIES IN PART** Defendant's Renewed Motion *in Limine* No. 1 (ECF No. 101);

///

3)  **ORDERS** Plaintiff to cure the disclosure deficiencies outlined above pertaining to her non-retained experts (Dede Echitey, Mark Melden, and Dianna Hansen) within seven (7) days of the date of this Order;

4)  **DENIES** Defendant's Renewed Motion *in Limine* No. 4 (ECF No. 102); and

5)  **GRANTS IN PART AND DENIES IN PART** Defendant's Renewed Motion *in Limine* No. 6 (ECF No. 103).

The Court again reminds the Parties that these rulings are without prejudice, and that the Parties may make valid contemporaneous objections at trial concerning the matters discussed in this Order. Relatedly, the Court may change any of these rulings based on the testimony developed at trial.

**IT IS SO ORDERED.**

Dated: May 9, 2024

Hon. Janis L. Sammartino
United States District Judge